**Dorothy Monica DAVID,**
**Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF DENVER; Wellington Webb, Mayor of the City and County of Denver; James Collier, Chief of Police, City and County of Denver; Beth McCann, Manager of Safety, City and County of Denver; Stanley Baniszewski; John R. Johnson; William Honer; James Leo; Clayton Kelly Carpenter, Defendants–Appellees.**

No. 94–1263.

United States Court of Appeals,
Tenth Circuit.

Dec. 3, 1996.

2000e–17. Officer David advances the following arguments: (1) that the trial judge should have recused from the case because of his contacts with the Denver Police Department; (2) that the court erred in dismissing her § 1983 claims against Officers Baniszewski and Johnson on the grounds that they did not act under color of law when engaging in the alleged harassment and retaliation; (3) that the court erred in granting summary judgment to Manager of Safety Martinez, Chief Zavaras, Captain Carpenter, Lieutenant Leo, and Sergeant Honer on her § 1983 retaliation claim on the grounds that her speech did not address a matter of public concern; (4) that the court erred in dismissing her § 1983 claim against the City of Denver because the alleged constitutional violations were not caused by a municipal policy or custom; and (5) that the court erred in entering judgment in favor of the defendants after a bench trial on her Title VII harassment and retaliation claims.

We exercise jurisdiction under 28 U.S.C. § 1291. We conclude that the district court erred in dismissing Officer David's § 1983 claim against Officers Baniszewski and Johnson. However, in all other respects, we affirm the decision of the district court.

## I. BACKGROUND

Officer David began working for the Denver Police Department (the Department) in 1976 and became a regular commissioned officer in 1979. In the mid–1980s, she also worked off-duty as a security guard at an apartment complex with Officers Baniszewski and Johnson. According to Officer David, Officer Baniszewski made uninvited sexual advances toward her during their off-duty employment. She maintains that when she refused Officer Baniszewski's advances, he and Officer Johnson began to harass and threaten her and continued to do so after she reported their conduct to Department supervisors. Eventually, she asserts, Officers Baniszewski and Johnson convinced the manager of the apartment complex to fire her from her off-duty security job by making

Barry D. Roseman (George C. Price with him on the briefs), Denver, CO, for Plaintiff–Appellant.

J. Wallace Wortham, Jr., City Attorney, City and County of Denver (Robert A. Dill and Casey D. Paison, Dill, Dill, Carr & Stonbraker, P.C., Denver, CO, with him on the briefs), for Defendants–Appellees.

Before HENRY, SETH *, and BRISCOE, Circuit Judges.

HENRY, Circuit Judge.

Denver Police Officer Dorothy Monica David appeals the district court's judgment in favor of the City and County of Denver, Mayor Wellington Webb, former Manager of Safety Manuel Martinez, former Chief of Police Aristedes Zavaras, Captain Clayton Kelly Carpenter, Lieutenant James Leo, Sergeant William Honer, and Denver Police Officers Stanley Baniszewski and John R. Johnson on her claims of sexual harassment and retaliation pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to

---

\* The late Honorable Oliver Seth, Senior Judge, United States Court of Appeals for the Tenth Circuit, heard oral argument in this case but did not participate in the final decision.

false statements about her record as a police officer.

According to Officer David, the Department failed to adequately respond to her informal complaints about Officers Baniszewski and Johnson. As a result, in April 1989, she filed a formal complaint with the Department's Internal Investigation and Inspection Bureau (the IIIB complaint). She named not only Officers Baniszewski and Johnson but her immediate supervisor, Sergeant Honer. After conducting an investigation, the Department concluded that her allegations were unfounded.

Shortly after Officer David filed the IIIB complaint, Captain Carpenter transferred her to a different shift. He testified at trial that he made this decision in order to separate Officer David from Officers Baniszewski and Johnson. Then, on April 28, 1989, Officer David was approximately one minute late for daily roll call. Lieutenant Leo determined that disciplinary action should be taken against Officer David for tardiness. Witnesses for the Department testified at trial that Officer David had been warned about Lieutenant Leo's strict roll call policies and that she had been suspended for thirty days in May 1988 for chronic tardiness. Under the terms of the May 1988 suspension order, twenty days of the suspension were held in abeyance on the condition that Officer David was not further disciplined for tardiness for one year.

Pursuant to Lieutenant Leo's decision, the disciplinary case against Officer David for being late for roll call was referred to Chief Zavaras. He recommended a twenty day suspension, and Manager of Safety Martinez approved his recommendation. However, Officer David appealed to the Denver Civil Service Commission, and a hearing officer eventually vacated the suspension.

On May 3, 1989, Officer David filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that she had been sexually harassed by a coworker. She asserted that she had complained about the harassment to her supervisors but that "[n]o corrective action has been taken to stop the harassment nor has any disciplinary action been taken against the harasser."

Aplt's App. vol. I, at 138. She also alleged that she had been threatened with a ninety day suspension within the next month.

On Monday May 16, 1989, Officer David arrived at roll call ten minutes before her normal reporting time. She had been informed by her supervisor on the previous Friday that she should report an hour early. The duty sergeant reported her tardiness, and the matter was again referred to Chief Zavaras, who set it for hearing in August 1989.

In June 1989, Officer David sent a letter to the Denver City Attorney announcing that she would pursue claims against the City and individual police officers for sexual harassment and retaliation. She referred to sexual harassment by Officer Baniszewski and a pattern of discrimination and harassment by Officers Baniszewski and Johnson when she refused Officer Baniszewski's advances. She also repeated the allegation that her supervisors failed to take adequate action regarding the harassment and retaliated against her for complaining about the harassment by pursuing unwarranted disciplinary actions against her. In July 1989, Officer David filed a second EEOC complaint alleging that the sexual harassment and retaliation had continued.

In August 1989, Chief Zavaras conducted a hearing concerning the May 16th roll call incident. In light of her previous record of tardiness, Chief Zavaras recommend a six months' suspension. Pursuant to Department procedure, the matter was referred to Manager of Safety Martinez, who accepted Chief Zavaras's recommendation. Officer David appealed the case to the Denver Civil Service Commission, which reduced the suspension to three months.

Officer David filed the instant case in January 1990. She asserted a § 1983 sexual harassment claim against Officers Baniszewski and Johnson, a § 1983 claim for violation of her First Amendment rights against the City of Denver, Manager of Safety Martinez, Chief Zavaras, Captain Carpenter, Lieutenant Leo, and Sergeant Honer, and Title VII sexual harassment and retaliation claims against all of the defendants. The defen-

dants filed a motion to dismiss all of the § 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion to dismiss as to Officers Baniszewski and Johnson, the City of Denver, and Mayor Wellington Webb but denied the motion as to the remaining individual defendants. With regard to Officers Baniszewski and Johnson, the court reasoned that the allegations concerned off duty actions not taken under color of law. As to the City of Denver and Mayor Wellington Webb, the court said that there was no municipal policy underlying the alleged constitutional violations.

Shortly before trial, the remaining individual defendants filed a motion for summary judgment arguing that Officer David's complaints about sexual harassment and retaliation did not address matters of public concern and that, as a result, they were entitled to summary judgment on her § 1983 First Amendment claim. The court granted the motion and proceeded to trial on only the Title VII sexual harassment and retaliation claims.

At the final pretrial status conference, the trial judge informed the parties that he was acquainted with the following witnesses listed by the defendants: David Michaud, who had succeeded Mr. Zavaras as Denver Police Chief; Denver Police Sergeant Armedia Gordon; Manager of Safety Martinez; and Denver Police Captain Tina Rowe. The judge reported that he had represented Chief Michaud in his official capacity as Deputy Sheriff in a § 1983 action filed over twenty years ago. Between the conclusion of the § 1983 case and December 1992, the judge stated, he had four or five casual conversations with Chief Michaud. Then, in December 1992, the judge's son was murdered. The judge recalled two or three conversations with Chief Michaud about the homicide investigation.

The judge's contacts with the other witnesses were more limited. He stated that he had spoken with Sergeant Gordon during the investigation of his son's murder. He also told the parties that, when he was on the state trial bench, Mr. Martinez had appeared before him as a public defender. He remem-

bered several passing conversations with Mr. Martinez in the course of trying cases. Finally, the trial judge said that although he did not recall meeting captain Tina Rowe, he was familiar with her work as a police officer.

Following the judge's disclosures, Officer David filed a motion for disqualification pursuant to 28 U.S.C. § 455(a). She argued that, in light of the Department's investigation of his son's murder and his acquaintance with defense witnesses, the judge could not be impartial and that, "[a]t an absolute minimum, these circumstances create an appearance of impropriety." *See* Aplt's App. vol. II, at 243. The trial judge denied the motion, concluding that his impartiality could not reasonably be questioned.

After a bench trial, the court issued findings of fact and conclusions of law rejecting Officer David's Title VII claims. In analyzing the sexual harassment claim, the court observed that "[t]he evidence regarding Officer Baniszewski's actions toward [Officer David], which were of a sexual nature, was relatively clear. However, those actions occurred in an off-duty employment setting, over which the police officials named as Defendants had no control." *See* Aplt's App. vol. II, at 407. With regard to the retaliation claim, the court concluded that Officer David had failed to establish a causal connection between her complaints concerning sexual harassment and the disciplinary action against her. The court also found that the defendants had presented legitimate, nondiscriminatory reasons for the disciplinary actions and that Officer David had not demonstrated that these reasons were pretextual.

## II. DISCUSSION

*A. Motion to Disqualify the Trial Judge*

 Because Officer David's allegations regarding the trial judge implicate all of the court's rulings, we begin with this issue. A federal statute provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See* 28 U.S.C. § 455(a). "The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rog-*

*ers,* 831 F.2d 937, 939 (10th Cir.1987). We review the district court's decision for an abuse of discretion. *See United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir.1992), *cert. denied,* 507 U.S. 1033, 113 S.Ct. 1854, 123 L.Ed.2d 477 (1993).

■ Officer David argues that because of his contact with the Denver Police Department, including his representation of Chief Michaud over twenty years ago, the trial judge should have granted the § 455(a) motion for disqualification. She contends that the judge's questioning of several defense witnesses at trial demonstrates that he was not impartial. For several reasons, we are not persuaded by this argument. First, under § 455(a), a judge's prior representation of a witness or a party in an unrelated matter does not automatically require disqualification. *See United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992); *National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). Moreover, there is no indication in the record that the trial judge's prior contact with Chief Michaud, Manager of Safety Martinez or the various defense witnesses affected his management of the case or his factual findings and legal conclusions. Additionally, after a careful review of the record on appeal, we do not find any evidence of partiality in the judge's questioning of witnesses, a practice authorized by Fed.R.Evid. 614(b) and used here to clarify testimony.

■ In today's era of crowded dockets, recusal has become more complicated. Although the test in this circuit is one of reasonableness, it is reasonableness tempered with a knowledge of the relevant facts. It is hardly possible for a judge with criminal jurisdiction to have no knowledge of some personnel in law enforcement. We must examine the judge's discretionary decision not to recuse both in light of the judge's duty to decide cases fairly and his duty to avoid impropriety, determined from an informed, reasonable viewpoint. "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman,* 831 F.2d at 939. Our review of these mat-

ters leads us to conclude that the trial judge did not abuse his discretion in denying Officer David's motion for disqualification pursuant to 28 U.S.C. § 455(a).

*B. Dismissal of § 1983 Claims against Officers Baniszewski and Johnson*

■ Officer David argues that the district court erred in dismissing her § 1983 sexual harassment claims against Officers Baniszewski and Johnson on the grounds that their actions were not taken under color of law. As a preliminary matter, we note that the record is somewhat unclear as to whether the district court dismissed the claims against Baniszewski and Johnson pursuant to Fed. R.Civ.P. 12(b)(6) or whether the court granted summary judgment in their favor pursuant to Fed.R.Civ.P. 56. As stated above, the defendants filed a joint motion to dismiss Officer David's § 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion and supporting brief challenged the complaint on its face and did not refer to any evidentiary materials. Officer David filed a response to the defendants' motion and attached an affidavit in which she discussed the circumstances of her off-duty employment as a security guard and described some of the evidence that she planned to present at trial.

The district court then heard oral argument on the defendants' motion and ruled from the bench. As to the allegations against Officer Baniszewski and Johnson, the court examined the complaint and concluded that it did not state a claim because the alleged conduct "occurred in their private lives." *See* Aplt's App. vol. I, at 45. However, the written order memorializing the court's ruling states that "[t]he motion to dismiss the Plaintiff's second claim for relief, under 42 U.S.C. § 1983, was treated as a motion for summary judgment." *Id.* at 57.

In her appellate brief, Officer David characterizes the court's ruling on her claims against Officers Baniszewski and Johnson as the grant of a Fed.R.Civ.P 12(b)(6) motion. *See* Aplt's Br. at 11. In contrast, the officers maintain that the court granted summary judgment in their favor. *See* Aples' Br. at 3–4. They contend that the court converted

their motion to dismiss into a motion for summary judgment because Officer David submitted evidence outside the pleadings in her response. *See id.*

Fed.R.Civ.P. 12(b) provides that if "matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Therefore, a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) cannot be converted into a summary judgment motion without notice and an opportunity for the parties to present relevant evidence. *See Brown v. Zavaras,* 63 F.3d 967, 969 (10th Cir.1995); *Jarvis v. Nobel/Sysco Food Services Co.,* 985 F.2d 1419, 1423 (10th Cir.1993); *Ketchum v. Cruz,* 961 F.2d 916, 919 (10th Cir.1992); *United States v. Gutierrez,* 839 F.2d 648, 651 (10th Cir.1988). The required notice may be actual or constructive, and in some circumstances, courts have concluded that the submission of evidentiary materials by the movant, the nonmovant, or both of them constitutes sufficient notice. *See Nichols v. United States,* 796 F.2d 361, 364 (10th Cir.1986) ("[F]ailure to give notice is not reversible error if a party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response."); *Grove v. Mead Sch. Dist. No. 354,* 753 F.2d 1528, 1533 (9th Cir.) ("A represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment."), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).

In the instant case, although the issue is close, the record fails to establish that the parties received sufficient notice of the conversion of the defendants' Rule 12(b)(6) motion to a motion for summary judgment. Even though Officer David submitted evidentiary materials in response to the motion to dismiss, the transcript of the motions hearing indicates that the district court only considered the allegations of the complaint rather than the evidentiary materials. *See* Aplt's App. vol. I, at 45 ("I'm looking at *the four corners of the complaint* here.... I don't think there's any cause of action against Baniszewski and Johnson.") (emphasis added). In light of its decision at the hearing to treat the defendants' motion as directed at the four corners of the complaint, it was not proper for the court to subsequently convert its ruling into the grant of a summary judgment motion without further notice to the parties. *Cf. Jarvis,* 985 F.2d at 1423–24 (concluding that, because the nonmovant had the opportunity to object, the parties received the required notice when the court announced at the beginning of a motions hearing that a motion to dismiss would be treated as a motion for summary judgment). Accordingly, we will treat the district court's decision as the dismissal of the § 1983 claims against Baniszewski and Johnson pursuant to Fed.R.Civ.P. 12(b)(6). *See Blue Circle Cement, Inc. v. Board of County Comm'rs,* 27 F.3d 1499, 1503 (10th Cir.1994) ("[A] court's failure to comply with the notice requirements of Rule 56 constitutes harmless error if the dismissal can be justified under Rule 12(b)(6) standards without reference to matters outside the plaintiff's complaint.").

In reviewing the grant of a 12(b)(6) motion, we apply the same standards as the district court. *See Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir.1995). "We 'must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.'" *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir.1994) (quoting *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only "if the plaintiff can prove no set of facts to support a claim for relief." *Jojola,* 55 F.3d at 490; *see also Noland v. McAdoo,* 39 F.3d 269, 273 (10th Cir.1994). Applying these standards, we must determine whether Officer David can prove any set of facts that would establish that Officers Baniszewski and Johnson acted under color of law when they allegedly engaged in the sexual harass-

ment and retaliation described in her complaint.

As the parties have noted, § 1983 creates a cause of action against individuals who violate federal law while acting "under color of state law." *See* 42 U.S.C. § 1983; *Jojola*, 55 F.3d at 492. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). The defendant's authority may be actual or apparent. *Jojola*, 55 F.3d at 493. However, "it is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494.

A number of courts have applied § 1983's color of law requirement to the conduct of off-duty police officers. *See, e.g, Martinez v. Colon*, 54 F.3d 980, 986–89 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118–19 (7th Cir. 1995); *Barna v. City of Perth Amboy*, 42 F.3d 809, 815–19 (3d Cir.1994); *Pitchell v. Callan*, 13 F.3d 545, 547–49 (2d Cir.1994); *United States v. Tarpley*, 945 F.2d 806, 808–09 (5th Cir.1991), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992). The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. *Martinez*, 54 F.3d at 986. Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id.* Courts have described the central inquiry in varying terms. According to the First Circuit, "[t]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.*

For the Seventh Circuit, the fundamental question is "whether [the officer's] actions related in some way to the performance of a police duty." *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir.1990).

Several decisions of this circuit illustrate the application of the under color of law requirement to police officers and other state officials. In *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429–30 (10th Cir.1984), *cert. granted, judgment vacated and remanded for reconsideration on other grounds,* 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33, *and cert. denied,* 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985), we stated that the defendant acted under color of law when he stopped a suspected shoplifter, flashed his badge, identified himself as a police officer providing security for the store, told the suspect that he was under arrest, and subsequently used police documents to complete a citizen's arrest form. We said that these facts supported the conclusion that the defendant was functioning as an on-duty police officer and could therefore be held liable under § 1983. *Id.*

In other circumstances involving state employees we have reached the opposite conclusion. For example, in *D.T. v. Independent Sch. Dist. No. 16*, 894 F.2d 1176, 1186–88 (10th Cir.), *cert. denied,* 498 U.S. 879, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990), we concluded that a teacher who sexually abused a student during a summer vacation had not acted under color of law. We focused on the fact that, during the vacation months, the teacher was free of all obligations to the school district. *Id.* at 1187. We rejected the argument that the teacher's "cloak of authority" satisfied the color of law requirement, reasoning that there was no real nexus between the sexual abuse and the public school. *Id.* at 1188; *see also Jojola*, 55 F.3d at 493–94 (dismissing § 1983 claim against school janitor alleged to have sexually molested a student because the defendant did not act under color of law).

Similarly, in a recent decision, we concluded that even on-duty law enforcement officers do not act under color of law in certain circumstances. In *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir.1996), we held that po-

lice officers who staged a robbery of a convenience store (as a practical joke on an acquaintance who worked there) did not act under color of law because they did not use their state authority to carry out their plan. We reached this conclusion in spite of the fact that the on-duty officers had used a number of items of police property. *See id.* at 1513 (Jones, J., concurring in part and dissenting in part).

Finally, this circuit has applied § 1983's color of law requirement to allegations of sexual harassment. In *Woodward v. City of Worland,* 977 F.2d 1392, 1401 (10th Cir. 1992), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993), we observed that liability for sexual harassment under the Equal Protection Clause of the Fourteenth Amendment is generally based on some authority that the defendant has over the victim. "Otherwise, it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act of sexual harassment." *Id.* We noted that a number of courts had declined to hold a co-employee of the plaintiff liable for sexual harassment under § 1983 when the harassment did not involve the use of state authority. *Id.* at 1400. Although several of the defendants in *Woodward* were not supervisors, we did not rule out the possibility that nonsupervisory co-employees could be liable for sexual harassment under § 1983 in some instances. However, we did not resolve that issue, holding instead that the nonsupervisory defendants were entitled to qualified immunity because they were not violating clearly established law under the Equal Protection Clause when they harassed plaintiffs. *Id.* at 1400–01. In a subsequent decision, we noted that "in order to establish the state action necessary to support a § 1983 ·[Fourteenth Amendment sexual harassment claim], [the defendant] had to be plaintiff's supervisor or in some other way exercise state authority over her." *See Noland,* 39 F.3d at 271.

In the instant case, accepting the allegations of Officer David's complaint as true and affording her the benefit of favorable inferences pursuant to Fed.R.Civ.P. 12(b)(6), Officer David may be able to establish that Officers Baniszewski and Johnson acted under color of law when they engaged in the sexual harassment at issue. In particular, Officer David's complaint alleges that all of the defendants acted under color of law. Aplt's App. at 4. Although the complaint characterizes the two officers as co-employees of Officer David, *see id.* at 3, we note that in certain instances co-employees may exercise de facto authority over sexual harassment victims such that they act under color of law. *See Poulsen v. City of N. Tonawanda,* 811 F.Supp. 884, 895 (W.D.N.Y. 1993) (concluding that a factual dispute about a defendant's de facto authority over the plaintiff precluded summary judgment on a § 1983 Fourteenth Amendment sexual harassment claim). Thus, if Officer David can establish that, in committing the alleged sexual harassment, Officers Baniszewski and Johnson had supervisory authority over her or in some other way exercised state authority over her, *see Noland,* 39 F.3d at 271, then she may be able to recover on her § 1983 Fourteenth Amendment sexual harassment claim. We therefore conclude that the district court erred in dismissing Officer David's § 1983 claim against Officers Baniszewski and Johnson.[1]

## C. First Amendment Claim

Officer David challenges the district court's grant of summary judgment to Manager of Safety Martinez, Chief Zavaras, Captain Carpenter, Lieutenant Leo, and Sergeant Honer on her First Amendment claim under § 1983. The district court held that because Officer David's complaints about sexual harassment and retaliation did not address matters of public concern, these defendants were all entitled to qualified immunity. Officer David argues on appeal that

---

1. We note that in their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Officers Baniszewski and Johnson did not assert the defense of qualified immunity. Accordingly, we do not here address the question of whether Officer David's complaint alleges that in sexually harassing her

Officers Baniszewski and Johnson violated "clearly established ... constitutional rights of which a reasonable person would have known." *Woodward,* 977 F.2d at 1396 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

her complaints about retaliation and harassment did involve matters of public concern and that summary judgment was not warranted.

■ We engage in de novo review of the district court's grant of summary judgment, applying the same standards as the district court under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Factual disputes must be resolved and inferences drawn in favor of Officer David, the nonmoving party. *Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993). Summary judgment is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law.

The district court's grant of summary judgment was based on the doctrine of qualified immunity, which protects public officials performing discretionary functions unless their conduct violates " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Because Officer David asserts that the defendants violated her clearly established First Amendment rights as a public employee, we must examine the contours of that right in order to determine whether the district court's grant of summary judgment to the defendants was proper. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Supreme Court has established a two-part test for evaluating the claims of public employees alleging that their employers have retaliated against them for exercising their First Amendment rights. *See Connick v. Myers*, 461 U.S. 138, 142–54, 103 S.Ct. 1684, 1687–94, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). First, one must determine whether the plaintiff's state-

ments can be "fairly characterized as constituting speech on a matter of public concern." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. Second, courts must determine whether the " 'interests of the [employee], as a citizen, in commenting upon matters of public concern' " outweigh the " 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 142, 103 S.Ct. at 1687 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734); *see also Workman v. Jordan*, 32 F.3d 475, 482–83 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995); *Starrett v. Wadley*, 876 F.2d 808, 815 (10th Cir.1989); *Conaway v. Smith*, 853 F.2d 789, 795–96 (10th Cir.1988). It is the threshold question of whether Officer David's speech involved a matter of public concern that is at issue here.

■ In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen. *See Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Speech that pertains to a public agency's "discharging its governmental responsibilities" ordinarily will be regarded as speech on a matter of public concern. *See id.*, 461 U.S. at 148, 103 S.Ct. at 1690–91. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern *See id.* at 147–49, 103 S.Ct. at 1690–91; *Woodward*, 977 F.2d at 1403. In distinguishing between these two categories of speech, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91. "The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen]." *Workman*, 32 F.3d at 483.

In *Woodward*, we examined a First Amendment claim in which employees of a county sheriff's department alleged that their supervisors and co-employees had retaliated against them after they filed formal sexual harassment complaints against a police offi-

cer and an undersheriff. 977 F.2d at 1403–04. We concluded that the sexual harassment complaints addressed personal matters, reasoning that the thrust of the plaintiff's speech was that "they personally were being subjected to sexual harassment and they wanted it to stop." *Id.* We added that although there were several general references in the complaints to the possibility that other women had been sexually harassed, the purpose of the complaints was to address personal grievances rather than to assert that the sheriff's office had failed to discharge its official responsibilities. *Id.* at 1404.

However, we also explained that the fact that the plaintiffs' complaints involved personal grievances about internal employment conditions was not the end of the inquiry. We noted that in *Connick*, the Supreme Court distinguished one question from the remainder of a questionnaire distributed by an assistant district attorney to her colleagues. The question asked whether assistant district attorneys felt pressure to work on political campaigns. The Supreme Court characterized that question as involving fundamental constitutional rights and therefore addressing a matter of public concern. *See Connick*, 461 U.S. at 149, 103 S.Ct. at 1691; *Woodward*, 977 F.2d at 1404. Interpreting *Connick*, we stated in *Woodward* that "even speech that focuses on internal employment conditions and is made in the context of a personal dispute may be regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting." 977 F.2d at 1404. Nevertheless, applying the doctrine of qualified immunity, we stated in *Woodward* that we were aware of no case holding that speech similar to the plaintiffs' complaints that they were personally subjected to sexual harassment constituted speech on a matter of public concern. *Id.* We therefore concluded that the defen-

dants were entitled to qualified immunity on the First Amendment claims. *Id.*[2]

■ In the instant case, we must apply these principles to determine whether the statements made by Officer David before the alleged retaliatory actions addressed matters of public concern. In particular, we must examine the three written complaints that were made by Officer David prior to the imposition of the six month suspension by Chief Zavaras and Manager of Safety Martinez in August 1989—her two EEOC complaints and her June 30, 1989 letter to the Denver City Attorney.

Upon review of these complaints, we conclude that Officer David spoke primarily in her role as an employee rather than as a citizen. Like the complaints we analyzed in *Woodward*, Officer David's complaints and letter allege that she has been personally subjected to sexual harassment, retaliation, and unwarranted disciplinary action. Her allegations focus on the conditions of her own employment, and in neither the EEOC complaints nor the letter to the City Attorney does Officer David allege that other employees have been subjected to harassment or retaliation or that the harassment and retaliation has interfered with the Department's performance of its governmental responsibilities. Therefore, Officer David's statements do not involve matters of public concern under the *Connick* standard.

In her appellate brief Officer David argues that *Woodward* is not controlling because this circuit has recognized that sexual harassment involves matters of public concern. She cites *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir.1989) and *Wren v. Spurlock*, 798 F.2d 1313 (10th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987). In *Wulf*, this circuit concluded that a police officer's letter to the Kansas Attorney General requesting an investigation of the

---

2. A number of courts have agreed with *Woodward's* conclusion that complaints framing sexual harassment allegations as personal grievances rather than as a widespread practice affecting the agency's performance of its public responsibilities do not constitute speech on a matter of public concern. *See, e.g., Morgan v. Ford*, 6 F.3d 750, 754–55 (11th Cir.1993), *cert. denied*, ——

U.S. ——, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

Wichita Police Department addressed matters of public concern. 883 F.2d at 857–58. The letter alleged interference with the police officer's right to join a union, unfair treatment of the union, misuse of public funds, and sexual harassment of one officer by a supervisor. *Id.* at 849–50. Significantly, the sexual harassment allegation did not involve the officer who had written the letter. Similarly, in *Wren* we held that a letter written by a group of teachers to a state education association and requesting an investigation of a public school principal involved matters of public concern. 798 F.2d at 1317–18 n. 1. The letter included allegations of sexual harassment of several students and teachers. *Id.* at 1317.

The complaints at issue in *Wulf* and *Wren* contrast sharply with the statements of Officer David at issue here. In particular, the *Wulf* and *Wren* complaints both involved allegations that the public agency or official was not properly performing governmental responsibilities. In neither case did the complaints involve allegations that focused exclusively on the conditions of the complainants' own employment. Moreover, neither case establishes a rule that allegations of sexual harassment inherently involve matters of concern under the *Connick* standard.

Accordingly, following *Woodward,* we conclude that because Officer David's EEOC complaints and her letter to the Denver City Attorney did not involve matters of public concern under the *Connick* standard, the district court properly granted summary judgment to Manager of Safety Martinez, Chief Zavaras, Captain Carpenter, Lieutenant Leo, and Sergeant Honer on Officer David's § 1983 First Amendment claim.

### D. First Amendment Claim Against the City and County of Denver

Officer David also argues that the district court erred in dismissing her § 1983 claims against the City and County of Denver (the City). The defendants sought dismissal of the § 1983 claim against the City in the same Fed.R.Civ.P. 12(b)(6) motion in which they sought dismissal of the individual claims against Officers Baniszewski and Johnson. In ruling from the bench that the claim

against the City should be dismissed, the court stated that there was no municipal policy or custom underlying the alleged harassment and retaliation and told Officer David's attorney that "what you're attempting to do here is apply vicarious liability on the city for the actions of, or the purported actions of the [individual] defendants." *See* Aplt's App. vol. I, at 48. In announcing its ruling, the court did not refer to the affidavit submitted by Officer David in response to the defendants' motion to dismiss, and there is no indication in its remarks that its decision was based on anything but a reading of Officer David's complaint. However, in its written ruling memorializing the dismissal of the § 1983 claim against the City, the court stated that it had treated the motion to dismiss as a motion for summary judgment. *See* Aplt's App. vol. I, at 57. For the reasons we set forth in our discussion of the claims against Officers Baniszewski and Johnson, we treat the court's ruling as the grant of a motion to dismiss the § 1983 claim against the City pursuant to Fed.R.Civ.P. 12(b)(6).

As the district court observed, municipalities may be held liable on § 1983 claims only if a municipal policy or custom causes a violation of federal law. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The Supreme Court has held that a municipal policy may include not only policy statements, ordinances, and regulations but the individual decisions of city officials who have "final policymaking authority." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion); *see also Randle v. City of Aurora,* 69 F.3d 441, 447–49 (10th Cir.1995). Municipal customs—for which a city may also be held liable under § 1983—have been defined as "persistent and widespread discriminatory practices of ... officials." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)).

Officer David argues on appeal that the district court erred in dismissing her § 1983 claim against the City because she alleged that retaliatory disciplinary actions

were taken against her by two officials with final policymaking authority—Manager of Safety Martinez and Chief Zavaras—and because she alleged that a municipal custom had caused a violation of her constitutional rights. With regard to the latter allegation, she cites paragraph 16 of her complaint, which alleges that "[o]ther female police officers employed by Defendant City and County of Denver have received sexual harassment from their fellow, male officers" and that these female officers "have complained about such sexual harassment to their superiors either, without receiving any affirmative, effective relief or receiving harassment and retaliation as a result of their having filed such complaints." *See* Aplt's App. vol. I, at 3. The defendants respond that it was the Denver City Commission rather that Manager Martinez or Chief Zavares that was the final policymaker with respect to the disciplinary actions against Officer David. The defendants also argue that the complaint's reference to sexual harassment of other officers is insufficient to allege that it was a municipal custom that caused the asserted constitutional violations.

 Under the 12(b)(6) standards, the district court's dismissal of the § 1983 claim against the City appears premature. Applicable provisions of the Denver Municipal Code do provide support for the City's contention that it is the Denver Civil Commission rather than Chief Zavaras or Manager of Safety Martinez that was the final policymaker with regard to the challenged disciplinary actions. *See* Aplt's App., vol. I, at 38–41 (citing Denver Municipal Code §§ C5.73–1 to C5.73–2(8)). However, the fact that Chief Zavaras and Manager of Safety Martinez were not final policymakers does not establish that the City could never be held liable for the violations alleged in Officer David's complaint. In certain instances, a reviewing body such as the Civil Service Commission may ratify the personnel decisions of subordinate officials and the reasons for them. In those instances, the reviewing body may constitute the final policymaker, and its actions may render a municipality liable under § 1983. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion)

("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because the decision is final."); *Ware v. Unified Sch. Dist. No. 492,* 902 F.2d 815, 819–20 (10th Cir.1990) (concluding that there was evidence in the record to support the plaintiff's claim that a school board acted with deliberate indifference to her First Amendment rights in approving a superintendent's decision to fire her). Accepting the allegations of Officer David's complaint as true and affording her the benefit of all favorable factual inferences, we cannot say that she could prove no set of facts under which the Denver Civil Service Commission, as the final policymaker for the City of Denver, ratified the assertedly retaliatory actions.

Nevertheless, we also conclude that the court's premature dismissal of the § 1983 claim against the City was harmless error. Officer David's claim against the City involves the same allegation that she made in her § 1983 claim against Manager of Safety Martinez, Chief Zavaras, Captain Carpenter, Lieutenant Leo, and Sergeant Honer—that her First Amendment rights were violated when city officials retaliated against her for speaking about a matter of public concern. Thus, our conclusion that Officer David's statements did not address matters of public concern under the *Connick* standard suggests that, like the individual defendants, the City is entitled to summary judgment on her § 1983 First Amendment claim.

 However, we note that because of the district court's dismissal of the § 1983 claim against the City pursuant to the defendants' Fed.R.Civ.P. 12(b)(6) motion, Officer David did not have the opportunity to respond to a summary judgment motion and accompanying evidentiary materials that specifically addressed her First Amendment claim against the City. In this procedural posture, when a district court prematurely dismisses a claim prior to trial, we must determine whether the court could have entered summary judgment sua sponte. *See Fuller v. City of Oakland,* 47 F.3d 1522, 1533 (9th Cir.1995). The entry of summary judg-

ment sua sponte is warranted only when the following conditions are met: (1) there is no dispute of material fact; (2) the losing party has had an adequate opportunity to address the issues involved, including an adequate time to develop any facts necessary to oppose summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Fuller,* 47 F.3d at 1533.

These conditions are satisfied with regard to Officer David's First Amendment claim against the City. There is no dispute of material fact as to the statements that she made before the six months' suspension was imposed by Manager of Safety Martinez and Chief Zavaras. Moreover, the issues relevant to Officer David's First Amendment claim against the City were fully argued in the individual defendants' motion for summary judgment and Officer David's response to that motion. *Cf. Hand v. Matchett,* 957 F.2d 791, 794 n. 2 (10th Cir.1992) (affirming grant of summary judgment sua sponte when the defendants "had adequate opportunity to address all pertinent issues in the case prior to the court's decision"); *Graham v. City of Oklahoma City,* 859 F.2d 142, 144 (10th Cir. 1988) (same). Therefore, even though the district court granted the City's Fed.R.Civ.P. 12(b)(6) motion prematurely, subsequent proceedings in the case authorized the court to enter summary judgment in favor of the City on the First Amendment claim. Accordingly, we conclude that the district court's judgment in favor of the City on her § 1983 First Amendment claim should be affirmed.

### E. Title VII Claims

■ Finally, Officer David challenges the district court's conclusion that there were non-discriminatory, non-retaliatory reasons for the disciplinary actions taken against her and that, as a result, she was not entitled to relief on her Title VII claims for sexual harassment and retaliation. She focuses on the evidence that she presented at trial that several male police officers with as many or more tardiness violations received much less severe discipline. She maintains that the defendants failed to adequately explain this difference in treatment. Officer David also points to Chief Zavaras's decision to require her to undergo a psychiatric examination. She notes that the order requiring the examination was issued one day after the Department received her notice of her intent to file a lawsuit and maintains that this sequence of events establishes the defendants' retaliatory motive. We review the district court's findings regarding the existence of actionable sexual harassment for clear error. *E.E.O.C. v. Flasher Co.,* 986 F.2d 1312, 1317 (10th Cir.1992); *Archuleta v. Colorado Dep't of Insts.,* 936 F.2d 483, 487 (10th Cir.1991).

In assessing the evidence regarding disciplinary actions against male officers, the district court observed that many of the proceedings occurred before Chief Zavaras assumed command of the Department. The court also noted Chief Zavaras's trial testimony that he had discovered a serious tardiness problem when he first became Chief and that, in response to the problem, he had adopted a policy of treating tardiness violations more severely than his predecessor. Additionally, the court found a lack of consistency in the Department's recordkeeping regarding disciplinary actions and concluded that it was difficult to meaningfully compare the treatment received by various officers. For all of these reasons, the court stated, the evidence regarding the less severe actions taken against male officers did not warrant a finding of discrimination or retaliation under Title VII. As to the psychiatric examination, the court found the timing of Chief Zavaras's order insufficient to establish a retaliatory motive.

■ Upon review of the record and the applicable law, we do not agree with Officer David that the evidence that male officers received less severe discipline establishes that the district court erred in rejecting her Title VII claims. "Title VII does not ensure that employees will always be treated fairly or that they will be [disciplined] only for meritorious reasons." *Archuleta,* 936 F.2d at 487. As Judge Ebel has observed:

Differences in treatment are inevitable, and even irrational or accidental differences of treatment occur in most business organizations of any size. Differential treatment not premised on rational busi-

ness policy may in some instances support an inference of illegal discriminatory intent, and a fact finder may, upon an appropriate record, infer that an illegal discriminatory motive lies behind otherwise irrational business conduct that disadvantages a protected status employee. However, such conclusion is not compelled as a matter of law. Sometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors, or that events occurred at different times when the company's attitudes toward certain infractions were different, or that the individualized circumstances surrounding the infractions offered some mitigation for the infractions less severely punished, or even that the less severely sanctioned employee may be more valuable to the company for nondiscriminatory reasons than is the other employee. Other times, no rational explanation for the differential treatment between the plaintiff and the comparison employees may be offered other than the inevitability that human relationships cannot be structured with mathematical precision, and even that explanation does not compel the conclusion that the defendant was acting with a secret, illegal discriminatory motive.

*Flasher*, 986 F.2d at 1320 (citations and footnotes omitted).

These principles support the district court's decision here. In light of Chief Zavaras's testimony that the disciplinary action against Officer David was imposed because of her record of previous violations and his concerns about widespread tardiness within the Department, it was not clearly erroneous for the district court to reject her claims of harassment and retaliation. Accordingly, we affirm the district court's judgment for the defendants on her Title VII claims.

## III. CONCLUSION

For the reasons set forth above, we REVERSE the district court's dismissal of Officer David's § 1983 claim against Officers

Baniszewski and Johnson and REMAND the case for further proceedings consistent with this opinion. In all other respects, we AFFIRM the decision of the district court.