**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 21, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

VIVIAN KOSAN,

        Plaintiff-Appellant,

v.

UTAH DEPARTMENT OF
CORRECTIONS; MIKE CHABRIES;
SCOTT CARVER; BRANDON
BURR; ANNABELLE BROUGH;
DALE SCHIPANNBOORD,

        Defendants-Appellees.

No. 07-4261
(D.C. No. 2:06-CV-00592-PGC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

Vivian Kosan was employed by the Utah Department of Corrections

(UDOC). She sued UDOC, four of its directors, and her former supervisor for

violating Title VII's anti-retaliation provision and the First Amendment's

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

free-exercise and free-speech clauses. The district court granted the defendants' summary judgment motion, prompting the instant appeal. We affirm, concluding that (1) Kosan's Title VII claim fails because the defendants' termination reason was not a pretext for retaliation; (2) her free-exercise claim fails because any burden on her religion was the result of neutral, generally applicable UDOC policies; and (3) her free speech claim fails because her speech was not a matter of public concern.

## BACKGROUND

Kosan began working for UDOC in November 2001 as a counselor at the Central Utah Correctional Facility (CUCF). In August 2003, UDOC allowed her to transfer to another position in order to distance herself from her supervisor, Brandon Burr, whom Kosan had reported for sexual harassment. Four months later, in December 2003, UDOC's Program Services Director, Dale Schipannboord, gave Kosan a "Letter of Warning" for "telling Brandon Burr's LDS Stake President . . . about unsubstantiated allegations of misconduct by Mr. Burr." Aplt. App., Vol. 2 at 392. The letter notified Kosan that "harsher disciplinary sanctions" would be considered if she repeated "this type of misconduct." *Id.* at 393. And in August 2004, UDOC's Director of Institutional Operations, Belle Brough, ordered Kosan, under threat of disciplinary action, not to "speak or bring up past issues regarding Mr. Burr with anyone." *Id.* at 400.

-2-

In September 2004, Kosan filed charges with the Equal Employment Opportunity Commission (EEOC) and the Utah Antidiscrimination and Labor Division (UALD), claiming that she had suffered (1) discrimination based on national origin, and (2) retaliation for complaining of Burr's harassment. In January 2005, Kosan agreed to dismiss the charges and to forego any Title VII claim based on those charges in exchange for UDOC's promises to keep Burr out of her chain of command, to refrain from further retaliation, and to audit her position to determine whether she was entitled to a reclassification.

In March 2005, after the parties had settled Kosan's discrimination charges, UDOC suspended her employment for several days because she had reported outside her chain of command that a coworker was sleeping on duty, had referred to him as a "joke," had failed to comply with an instruction to report the incident to an officer in the coworker's chain of command, and was untruthful during the subsequent investigation. Aplt. App., Vol. 3 at 421.

In May 2005, while auditing Kosan's position, UDOC began to suspect that Kosan had misrepresented her education credentials on several documents. In the position-analysis form she submitted in conjunction with her desk audit, she wrote in the form's education section, "I have been awarded and brought with me my BA and DMA in dance/history and technique in French, Russian and Latin." *Id.* at 491. Kosan had also claimed one or more bachelor's degrees on the resume that accompanied her initial job application:

BA   Bachelor of Arts, Brigham Young University (May '78)
Snow College (Sept '91) Equivalency given for my
dance certification and education upon invitation to join
both faculties as an instructor and lecturer.

*Id.* Finally, in her August 2000 application for Utah's Peace Officer Standards and Training (POST) program, in response to a prompt for "all colleges, universities and trade schools . . . attended," Kosan wrote, "BA equivalency given by Snow College to teach." *Id.* (underline omitted).

To investigate the matter, UDOC's human-resources manager asked Kosan for transcripts substantiating the claimed degrees. Kosan then admitted that she "did not have a liberal college degree but had been given a BA equivalency when [she] was invited as a faculty member for both [Brigham Young University] and Snow College." *Id.* at 456. On May 24, 2005, Kosan was removed from CUCF and notified by administrative complaint that UDOC intended to terminate her employment for falsely claiming a bachelor's degree.

Utah's Department of Public Safety investigated whether Kosan had "entered false information on [her] POST application," and it concluded in June 2005 that she did not. *Id.* at 478. The Department did, however, voice a "concern that the information [Kosan] provided inadvertently misled reviewers at a later date." *Id.*

In July 2005, UDOC finalized her termination. Kosan then filed a second charge of discrimination with the EEOC and the UALD. She also contested her

-4-

termination before the Utah Career Service Review Board (CSRB). The termination was initially upheld by a CSRB hearing officer, *id.*, Vol. 4 at 751, but later overturned by a panel of CSRB members, who concluded that Kosan's "equivalency statements were [not] intentionally misleading or otherwise a violation of Department policy," *id.*, Vol. 3 at 498. In its written decision, the CSRB panel indicated that "equivalency" referred to Brigham Young University and Snow College's ability to hire Kosan as an instructor, even though she lacked the required college degree, by substituting Kosan's practical experience for the degree. *Id.* at 492. UDOC appealed to the Utah Court of Appeals, but later dismissed the appeal after Kosan agreed to waive her right of reinstatement in exchange for UDOC paying the "full measure of her backpay" and notifying her husband of certain jobs within UDOC. *Id.*, Vol. 4 at 693.

After receiving a right to sue letter from the EEOC on her second charge of discrimination, Kosan commenced the instant litigation, claiming violations of her rights under Title VII (hostile work environment, sex discrimination, and retaliation), the Racketeer Influenced Corrupt Organizations Act (RICO), and federal and state constitutional guarantees of freedom of religion and speech. The district court entered summary judgment against Kosan on her federal claims, and dismissed her state-law claims without prejudice. Kosan now appeals the summary judgment as it relates to her Title VII retaliation claim and her federal constitutional claims.

## DISCUSSION

## I.  Standards of Review

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When applying this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party.  *Byers*, 150 F.3d at 1274.

## II.  Title VII Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  To successfully invoke this anti-retaliatory provision, an employee "must establish that retaliation played a part in the employment decision."  *Fye v. Okla. Corp. Com'n*, 516 F.3d 1217, 1224 (10th Cir. 2008).  This may be accomplished by "directly show[ing] that retaliatory animus played a motivating part in the employment decision" or, if there is no direct evidence of the employer's motive, by relying "on the familiar three-part *McDonnell Douglas* framework to prove that the employer's proffered

reason for its decision is a pretext for retaliation." *Id.* at 1225 (quotation omitted).

Kosan relies on *McDonnell Douglas*, which first requires the employee to "establish a prima facie case of retaliation by showing (1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Fye*, 516 F.3d at 1227 (quotation omitted). Once the employee establishes a prima facie case, the burden shifts to the employer to produce evidence of a non-discriminatory reason for the conduct, and then the employee has the burden of demonstrating pretext. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008).

The district court accepted Kosan's argument that she had engaged in protected opposition to discrimination. The district court also accepted Kosan's assertion that her suspension and termination were adverse employment actions causally connected to protected activities.[1] Kosan did not, however, challenge whether UDOC had articulated legitimate, nondiscriminatory reasons for the suspension and termination. Nor did she argue that UDOC's reasons for the

---

[1]     On appeal, Kosan adds to the list of adverse actions that her work station was moved to a closet, she was given no assistance in completing her position-analysis form, and her husband, who also worked for UDOC, received a letter of reprimand. Aplt. Br. at 15. But she did not raise these actions below when discussing adverse employment actions, *see* Aplt. App., Vol. 1 at 266, and we decline to consider them for the first time on appeal, *see Utah Lighthouse Ministry v. Found. for Apologetic Information & Research*, 527 F.3d 1045, 1051 (10th Cir. 2008).

suspension were pretextual. Consequently, the district court focused on Kosan's only remaining argument: that UDOC's reason for terminating her—falsely claiming a bachelor's degree—was a pretext for retaliation. We likewise limit our focus to determining whether UDOC's termination reason was pretextual, and we consider only those theories of pretext advanced in the district court. *Cf. Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 684 (10th Cir. 2007) (considering on appeal only those arguments presented to the district court regarding the existence of an implied-in-fact employment contract).

To show pretext, Kosan "must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [UDOC's] proffered legitimate reason[ ] for its action that a reasonable factfinder could rationally find [the reason] unworthy of credence and hence infer that [UDOC] did not act for the asserted non-discriminatory reason[ ]." *Fye*, 516 F.3d at 1228 (quotation omitted). Kosan argues that pretext is demonstrated by four points: (1) the CSRB's reversal of her termination; (2) the Utah Department of Public Safety's finding that she did not enter false information on her POST application; (3) the fact that UDOC issued its administrative complaint threatening to terminate Kosan before the deadline it had imposed for Kosan to provide transcripts supporting her degrees; and (4) her alleged misrepresentations were not materially significant.

First, in regard to the CSRB's reversal of Kosan's termination, "[t]he pertinent question in determining pretext is not whether [UDOC] was right to think [Kosan] engaged in misconduct, but whether [UDOC's] belief was genuine or pretextual." *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004) (quotation omitted). The CSRB determined only that Kosan had not intentionally misled UDOC, and therefore did not violate UDOC's policy regarding falsifying records. The CSRB did not determine, as we must, whether UDOC could have genuinely believed that Kosan falsely claimed to have a bachelor's degree. We conclude that no reasonable jury could dispute the genuineness of UDOC's belief. Specifically, Kosan's assertion on the position-analysis form that she had "been awarded and brought with me my BA" suggests only one thing—that she indeed possessed a bachelor's degree. Kosan's resume also portrays her as possessing a bachelor's degree from at least Brigham Young University, given the language, "Bachelor of Arts, Brigham Young University (May '78)." Aplt. App., Vol. 3 at 491. While Kosan attempted to explain to UDOC that she had "BA equivalency," and had even mentioned "[e]quivalency" on her resume, *id.*, we are not persuaded that her use of that term would have dispelled the reasonable belief that she had falsely claimed a bachelor's degree. As used in this case, "equivalency" simply refers to Brigham Young University and Snow College overlooking her lack of a bachelor's degree and employing her based on experience. The fact that those institutions substituted experience for

-9-

education in no way means that Kosan was "awarded" or otherwise in possession of a bachelor's degree.

Second, regarding the Utah Department of Public Safety's finding that Kosan did not enter false information on her POST application, it likewise does not undercut the genuineness of UDOC's termination reason. As far as we can tell, the Department's investigation was limited to Kosan claiming a bachelor's degree from Snow College. Consequently, the results of the investigation would have no bearing on Kosan's claim to a degree from Brigham Young University. But more importantly, the Department recognized that the information Kosan provided on her POST application was potentially misleading. Thus, UDOC's reliance on the application to terminate Kosan does not establish pretext.

Third, as for the timing of UDOC's administrative complaint threatening termination, there is no hint of pretext. The complaint was apparently issued several hours before the 5:00 p.m. deadline on May 24 for Kosan to produce transcripts showing a bachelor's degree. But there was no reason for UDOC to wait until 5:00 p.m., as Kosan had stated five days earlier that she did not have a degree.

Kosan's fourth and final pretext argument is that her misrepresentations "were not materially significant." Aplt. Br. at 20. She claims that after submitting her position-analysis form, she "attempted to correct [it]" but was told by her supervisor, Wayne Larson, and the human resources officer assigned to her

desk audit, Mike Tribe, that "her corrections did not matter." *Id.*[2]  Our review of the record, however, reveals that only Tribe made such a statement.  *See* Aplt. App., Vol. 2 at 310-12, 315.  And even then, he simply told Kosan that his focus in evaluating the desk audit was on what she had accomplished after becoming employed at UDOC.  *Id.* at 310.  Nothing he said indicates that the misrepresentation of a bachelor's degree is not a terminable offense.  Indeed, the undisputed evidence shows that UDOC has terminated at least fifteen employees since 1997 for "falsifying some type of record."  *Id.*, Vol. 1 at 189.  Further, when a UDOC employment application has been falsified, Utah Administrative Code § R251-105-4(3) authorizes termination without regard to the significance of the falsification.

We conclude that there is no genuine issue of material fact in regard to pretext and that the district court properly granted summary judgment against Kosan on her Title VII retaliation claim.[3]

---

[2]     While the district court stated that it would not consider Kosan's materiality argument because she failed to provide record support, *see* Aplt. App., Vol. 4 at 776 n.103, it appears that the district court did in fact consider the argument, *see id.* at 779-780.  In any event, we conclude that Kosan sufficiently briefed the argument below to perfect it for this appeal.  *See id.*, Vol. 2 at 252-53, 269.

[3]     Because Kosan has not shown a triable issue of retaliation, her argument concerning "the appropriate remedy for a breach of a Title VII settlement agreement" is moot.  Aplt. Br. at 22.  Moreover, we note that Kosan did not include in her complaint a claim for breach of that agreement.

### III. First Amendment Claims

Because this case also "implicates First Amendment freedoms, we perform an independent examination of the whole record in order to ensure that the judgment protects the rights of free expression." *Faustin v. City & County of Denver*, 423 F.3d 1192, 1196 (10th Cir. 2005). Additionally, because we conclude in the following sections that Kosan has not shown a constitutional violation, we need not reach the individual Defendants-Appellees' argument that they are entitled to qualified immunity. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003).

### A. Free Exercise Claim

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Kosan argues that Schipannboord's Letter of Warning, which admonished her for telling Burr's Stake President "about unsubstantiated allegations of misconduct by Mr. Burr," and which cautioned her against repeating that "type of misconduct," Aplt. App., Vol. 2 at 392-93, intruded upon her "right to consult with her clergy," Aplt. Br. at 24. But Burr's Stake President was not Kosan's Stake President. And Kosan did, at some time, consult with her own Stake President and Bishop regarding Burr. Aplt. App., Vol. 1 at 127.

-12-

Further, even if the Letter burdened Kosan's ability to consult with her own clergy, there is no evidence that the policies the Letter effectuated were religiously motivated or applicable to only religious conduct. "Neutral rules of general applicability ordinarily do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004) (footnote omitted). The Letter of Warning indicated that Kosan's actions violated various UDOC policies, including prohibitions against defaming administrators or staff, revealing confidential information, and discrediting UDOC or causing the public to lose confidence in UDOC. And it noted that the policies applied when "discussing Departmental business . . . with those in the community." Aplt. App., Vol. 2 at 393. Because these policies are religiously neutral and are applicable generally, not just in her consultations with clergy, Kosan's free-exercise claim fails.

## Free Speech Claim

"The freedom of speech guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652, 2666 (2007) (quotation omitted). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their

employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

Kosan argues that "the policy of [UDOC] combined with the actions of Defendant Brough and Defendant Schipannboord violated [her] free speech rights." Aplt. Br. at 27. Her argument appears to encompass Schipannboord's Letter of Warning and Brough's instruction not to "speak or bring up past issues regarding Mr. Burr with anyone." Aplt. App., Vol. 2 at 400.[4] We conclude that Kosan's free-speech rights were not violated because she was not disciplined or threatened with discipline for speaking on a matter of public concern.

"[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004). But "speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *David v. City & County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). Kosan's communication with Burr's Stake President, and the resulting limitations imposed by Schipannboord and Brough, concerned her allegations of misconduct against Burr—specifically, sexual harassment. Nothing in the record indicates, however,

---

[4] While Kosan summarily asserts that her free-speech rights were violated when UDOC suspended her for her conduct in the sleeping-coworker incident, she made no such assertion in the district court. We decline to consider the assertion for the first time on this appeal. *See Utah Lighthouse Ministry*, 527 F.3d at 1051.

-14-

that Kosan spoke, or was prohibited from speaking about, sexual harassment "as a widespread practice affecting [UDOC's] performance of its public responsibilities." *Id.* at 1356 n.2. Because Kosan's speech and the resulting limitations related to a purely personal grievance affecting her own conditions of employment, her free-speech claim fails.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge