Dan L. **TERRELL,** Plaintiff–Appellant,

v.

**CITY OF MUNCIE, et al.,**
**Defendants–Appellees.**

No. 01–2431.

United States Court of Appeals,
Seventh Circuit.

Argued July 9, 2002.

Decided July 26, 2002.

Before POSNER, RIPPLE, and WILLIAMS, Circuit Judges.

## ORDER

Dan Terrell, a former truck driver for the Muncie Sanitation District, appeals from the district court's summary judgment for his employer in this civil rights action alleging retaliatory discharge in violation of the First Amendment. Because Terrell cannot establish that his discharge was substantially or even partially motivated by his exercise of First Amendment rights, we affirm.

November 2, 1999, was election day in the city of Muncie, Indiana, with the incumbent Republican mayor, Dan Canan, facing off against Democratic challenger Jigger Smith. Among Smith's most active supporters was Terrell, who had attended campaign-organization meetings every Sunday for almost a year, marched in pro-Smith parades, canvassed neighborhoods for support, erected "Jigger Smith for Mayor" signs in his yard, and generally let it be known that he was a Smith-man. Despite such enthusiastic support, Smith lost the election.

Nine days later, Terrell lost his job. On November 11, the City terminated his at-will employment as a garbage truck driver with the Muncie Sanitary District. Terrell had worked for the District for at least six years, and had a spotless disciplinary record. He was terminated for an incident involving his use of the District's equipment to pick up old tires and a hose from his personal property. This pick up allegedly violated the District's rule against "unauthorized use of equipment," which is not defined in the Sanitary District Employee Manual but is an offense allowing for immediate termination.

The incident occurred in the late Friday afternoon of October 29, when Terrell was working overtime to pick up yard waste destined for the Muncie recycling facility. According to a letter from Rick Marlowe, one of the facility's owners, Terrell stopped his garbage truck at his own property, which was on his yard-waste route, and had his crew pick up two old tires and a garden hose. Terrell then dumped the tires and hose, mixed together with the yard waste, in a pile at the recycling facility. There is some dispute whether such mixing is normal practice sanctioned by the District, but in any event Marlowe's recycling center charged the city an additional two dollars per tire.

Marlowe sent his letter describing Terrell's October 29 activities to Bobby Smith, the Superintendent of Muncie's Sanitary District. Bobby Smith was Jigger Smith's cousin, and, at the time, a member of Jigger's election committee. Superintendent Smith investigated the statements in Marlowe's letter and concluded that Terrell had indeed collected the tires and hose from his property and improperly mixed them in with yard waste. There is some conflict in Smith's testimony regarding what happened next: either he consulted with James Hendershot, Administrator of the Sanitary District, and they both went to speak with the Board of Sanitary District Commissioners and an attorney, or he consulted only with Hendershot and an

attorney. Regardless, Smith fired Terrell for "unauthorized use of equipment" soon afterwards. As far as the record shows, the newly re-elected Mayor Canan had no input in the decision to fire Terrell.

After his termination, Terrell filed this suit against the City of Muncie, Mayor Canan, the Sanitary District, Hendershot, and the Sanitary District Commissioners. He alleged that the defendants fired him in retaliation for his "Jigger–for–Mayor" activities in violation of 42 U.S.C. §§ 1983, 1985, and 1986. The district court granted the defendant's motion for summary judgment, finding that Terrell had failed to produce any evidence establishing that his political activities in support of Jigger Smith motivated his termination.

As he did before the district court, Terrell argues on appeal that the City's stated reason for firing him–the undefined "unauthorized use of equipment"–was an ad hoc justification masking unconstitutional retaliatory motives. He points to testimony from co-workers at his unemployment benefits hearing showing that some District employees thought that they were required to collect any trash, including tires and hoses, left behind by people on their yard waste routes. That testimony coupled with the firing's proximity to the election of a candidate he openly opposed is sufficient to allow a rational jury to conclude that the defendants terminated him in retaliation for his political activities, Terrell contends. Additionally, he claims that Bobby Smith's conflicting versions of pre-termination discussions undermine Smith's credibility and create an issue of material fact precluding summary judgment.

To make out a First Amendment retaliation claim in the employment context, a plaintiff must first present evidence showing that (1) his or her speech was a matter of public concern and (2) that the speech played at least a substantial or motivating part in the employer's decision to take an adverse employment action. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gustafson v. Jones,* 290 F.3d 895, 906 (7th Cir.2002). If the plaintiff produces evidence on these two prongs, the burden shifts to the defendant to prove that it was either justified in taking the adverse action or would have done so even without the protected conduct. *Id.* We review the district court's summary judgment order de novo; summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir.2001) (citations and quotations omitted).

Although his political campaigning was protected First Amendment activity, Terrell has not produced evidence that could establish the second prong of the prima facie case–that his protected activity motivated his firing. The timing of Terrell's termination is not by itself evidence of the second prong; we have held that suspicious timing alone cannot prove that a defendant had a retaliatory motive. *See id* at 630; *see also David v. City & County of Denver,* 101 F.3d 1344, 1359–60 (10th Cir. 1996) (affirming summary judgment for defendants in Title VII case where timing was only proof of retaliation). The question is therefore whether the termination's suspicious timing coupled with Muncie's asserted justification for firing Terrell– which seems thin considering the testimony of other District employees that they regularly picked up trash along with yard waste–tends to prove that the District fired Terrell substantially because of his political activity.

In this case, it does not. The timing might be suspicious, the stated reason picayune–but nothing in the record could prove that Terrell's support for Jigger motivated the District to fire him. Even if Terrell could prove-up his contention that the District lied about why it terminated his employment, he would still not necessarily have evidence showing that the District fired him *because of* his political activities. The District might just as well have fired Terrell because, as is hinted at in the record, he had become disgruntled after the City awarded a recycling contract to Marlowe, with whom Terrell had once competed in the recycling business and with whom he had "never really hit it off." Some such constitutionally permissible reason for terminating Terrell's employment seems even more likely in this case because Supervisor Smith, who investigated and fired Terrell, was Jigger Smith's cousin and a member of Jigger's campaign committee. Only in particularly byzantine political situations does a supporter of a political candidate fire a fellow supporter substantially because of that support.

Terrell also argues that Bobby Smith's less-than-flawless recounting of the termination process precludes summary judgment because it damages Smith's credibility and Smith, according to Terrell, is the defendants' "star" witness. Smith's credibility is, however, immaterial absent any proof that Terrell's political activity motivated his termination.

. Because Terrell has no evidence that his First Amendment rights were violated, his § 1985 and § 1986 claims also fail. *See Indianapolis Minority Contractors Ass'n v. Wiley,* 187 F.3d 743, 754 (7th Cir.1999) (absence of any underlying violation of plaintiff's rights precludes success of § 1985 claim); *Grimes v. Smith,* 776 F.2d 1359, 1363 n. 4 (7th Cir.1985) (§ 1986 claim fails if no violation of § 1985 established);

*Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000) (same).

For these reasons, the district court's summary judgment for the defendants is AFFIRMED.