**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

E.F.W.; and A.T.B., by and through her next friend,
E.F.W.,

     Plaintiffs-Appellants,

v.

ST. STEPHEN'S INDIAN HIGH SCHOOL;
SHOSHONE AND ARAPAHOE TRIBAL SOCIAL
SERVICES; R. KELLY PROCTOR; LISA COOK-
GAMBLER, individually, and as an employee of
Fremont Counseling Services; FREMONT
COUNSELING SERVICES; THOMAS S. KENNAH;
DARRELL L. LONE BEAR, SR.; SUSAN DONNELL,
M.D.; and KELLY ELERTSON-JOHNSON,

     Defendants-Appellees,

and

LOUIS MOSQUEA, BIA police officer; WILLIAM
FALLS DOWN, Sergeant, BIA police officer; and
ANUP SIDHU, M.D.,

     Defendants.

No. 00-8002

---

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 98-CV-283-J)

Donald J. Rissler of Central Wyoming Law Associates, P.C., Riverton, Wyoming (John R. Hursch of Central Wyoming Law Associates, P.C., Riverton, Wyoming; John W. Whitehead, The Rutherford Institute, Charlottesville, Virginia, with him on the brief) for Plaintiffs-Appellants.

Stuart R. Day of Williams, Porter, Day & Neville, P.C., Casper, Wyoming, for Defendants-Appellees St. Stephen's Indian High School, R. Kelly Proctor, and Kelly Elertson-Johnson.

John C. Schumacher of Law Office of John Schumacher, Fort Washakie, Wyoming (Richard M. Berley of Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, Washington, with him on the brief), for Defendants-Appellees Shoshone and Arapahoe Tribal Social Services, Thomas Kennah, and Darrell Lone Bear, Sr.

Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming, for Defendants-Appellees Fremont Counseling Service and Lisa Cook-Gambler.

Nicholas Vassallo, Assistant United States Attorney (David D. Freudenthal, United States Attorney, with him on the brief), Cheyenne, Wyoming, for Defendant-Appellee Susan Donnell, M.D.

---

Before **SEYMOUR**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **BROWN**,[*] District Judge.

---

**SEYMOUR**, Circuit Judge.

---

E.F.W. brought this civil rights action individually and on behalf of her minor daughter A.T.B. against Shoshone and Arapaho Tribal Social Services (SATSS), SATSS employees Thomas Kennah and Darrell Lone Bear, Saint

---

[*] The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

Stephen's Indian Mission School, its social worker Kelly Elertson-Johnson and its principal R. Kelly Proctor, the Fremont Counseling Service and its employee Lisa Cook-Gambler, and Susan Donnell, Ph.D., a clinical psychologist employed by the Indian Health Service who practiced on the Wind River Indian Reservation in Wyoming. The complaint sought relief under 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations arising from the removal of A.T.B. from her mother's custody and her placement in a psychological care facility as a suicide risk, and the filing and investigation of charges that the mother abused and/or neglected her daughter.

The district court granted the motion of Tribal defendants SATSS and Mssrs. Kennah and Lone Bear to dismiss for lack of jurisdiction, concluding that these defendants were protected by sovereign immunity. *See E.F.W. v. Saint Stephen's Mission Indian High Sch.*, 51 F. Supp. 2d 1217, 1228 (D. Wyo. 1999). The court further held that to the extent relief was sought against defendants Kennah and Lone Bear individually, plaintiffs failed to state a claim for relief under section 1983 because they did not adequately allege action under color of state law, *see id.* at 1229, and they failed to state a claim under section 1985 because they did not allege class-based or racially discriminatory animus, *id.* at 1231. In a second order, the court granted defendant Donnell's motion for summary judgment and the remaining defendants' motions to dismiss on the

-3-

ground that plaintiffs had failed to make the requisite showing that any of them acted under color of state law. Plaintiffs appeal and we affirm.

## I

## Background

The facts in this action are essentially undisputed. Plaintiffs are enrolled members of the Northern Arapaho Tribe who live on the Wind River Indian Reservation in Wyoming. A.T.B. attended St. Stephen's High School, a private school founded by the Episcopal Church and located on the Reservation. In the fall of 1996, A.T.B. attended counseling sessions at the school with Ms. Elertson-Johnson, a social worker employed by the school. During this time A.T.B.'s boyfriend, who was also a student at the high school, was killed in an automobile accident. Dr. Donnell participated in a grief counseling session with the students, where she and Ms. Elertson-Johnson discussed concerns about A.T.B. Ms. Elertson-Johnson told Dr. Donnell that A.T.B. had demonstrated potentially suicidal behavior, including self-mutilation and depression, and that A.T.B. had reported physical and emotional abuse by her mother and another family member.

On November 12, 1996, Dr. Donnell received a call from Lisa Cook-Gambler, a professional counselor with Fremont Counseling Services. Fremont is a private mental health care facility that "covered" for Indian Health Service, a

federal agency, during holidays and after hours. Ms. Cook-Gambler said that she had been called to St. Stephen's the previous day, a federal holiday, on an emergency basis because A.T.B. had come to school with self-inflicted wounds on her arms and face. Ms. Cook-Gambler had called the Tribal police, the Tribal prosecutor and SATSS, and expected that A.T.B. would be placed in protective custody.

Mr. Kennah, a social worker with SATSS, took A.T.B. into protective custody on November 13 and made arrangements to place her in Pine Ridge Hospital, a mental health care facility, for emergency shelter care. A.T.B. was transported voluntarily to Pine Ridge by Tribal police officers. Dr. Donnell called Pine Ridge and referred A.T.B. for admission as a suicide risk so that her treatment there would be paid through Indian Health Service. On November 14, Mr. Kennah filed a petition with the Tribal court stating that A.T.B. had been taken into protective custody the previous day and placed at Pine Ridge because she had been assessed as suicidal. Mr. Kennah further stated that allegations of physical and emotional abuse were currently under investigation, and requested an emergency custody hearing and a protection order. The Tribal court issued an order the following day appointing Wind River Legal Services as guardian ad litem for A.T.B. The abuse and neglect charges were subsequently adjudicated in tribal court.

During the relevant time, the Eastern Shoshone and Northern Arapaho Tribes and the State of Wyoming were parties to an agreement for the provision of social services to the children of the Wind River Reservation at a level at least commensurate with services provided by the state to children outside the Reservation (the Intergovernmental Agreement). SATSS was the Tribal agency established by the tribes to supply these services. Under the Agreement, the state furnished funds to SATSS and SATSS provided child protective services and other family services set out in the agreement to Reservation children. As discussed in detail below, this Agreement is the linchpin of plaintiffs' arguments that the Tribal defendants are not entitled to sovereign immunity and that the conduct at issue occurred under color of state law for purposes of section 1983.[1]

## II

### Sovereign Immunity

SATSS, Mr. Kennah and his supervisor, Mr. Lone Bear, filed a motion to dismiss for lack of jurisdiction, arguing that they are entitled to Tribal sovereign

---

[1] In its order dismissing the claims against the non-Tribal defendants, the district court stated that plaintiffs had conceded their claims under section 1985 and dismissed them. *See* Aplt. App. at 320. Plaintiffs have presented no argument or authority in support of these claims to this court and we therefore deem them abandoned. *See Pino v. Higgs*, 75 F.3d 1461, 1463 (10th Cir. 1996); *Artes-Roy v. City of Aspen*, 31 F.3d 958, 960 n.1 (10th Cir. 1994).

immunity. The district court agreed, ruling that SATSS as a Tribal agency and Mssrs. Kennah and Lone Bear in their official capacities were protected from suit. The court rejected plaintiffs' argument that the Tribes became a quasi-state agency and thereby lost their sovereign immunity from suit by entering into the Intergovernmental Agreement. *See E.F.W.*, 51 F. Supp. at 1227-28.

On appeal, plaintiffs renew their contention that the Tribal defendants waived their sovereign immunity by entering into the Agreement, arguing that these defendants became state actors because the Agreement incorporates state law, provides for state training, and allows the state to inspect and review SATSS case records. Plaintiffs also argue that because Mr. Kennah did not obtain the Tribal emergency custody order until after A.T.B. had already been removed from her mother's custody and taken to Pine Ridge, the only authority supporting this action was a state law provision. We agree with the district court that the undisputed facts, including the provisions of the agreement upon which plaintiffs rely, do not establish a waiver of sovereign immunity.

Tribal sovereign immunity is a matter of subject matter jurisdiction, *see Fletcher v. United States*, 116 F.3d 1315, 1323-24 (10th Cir. 1997), which may be challenged by a motion to dismiss under Fed. R. Civ. P. 12 (b)(1), *see Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Such motions may take one of two forms. First, a party may make a facial challenge to the plaintiff's

allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. *Id.* at 1002. In addressing a facial attack, the district court must accept the allegations in the complaint as true. *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. In addressing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* In this case, the district court construed defendants' Rule 12(b)(1) motion as raising a facial challenge to the complaint's factual allegations. *See E.F.W.*, 51 F. Supp. 2d at 1221. Accordingly, the court presumed the allegations in the amended complaint and the exhibits attached to it as true for the purposes of deciding the motion. *Id.*[2]

---

[2] Plaintiffs proceeded below as if the Tribal defendants' motion to dismiss had been converted to one for summary judgment. They filed a motion under Fed. R. Civ. P. 56(f) asking the district court to deny summary judgment and allow additional discovery. The court concluded that the factual issues plaintiffs viewed as material and upon which they sought additional discovery were not relevant to the issue of Tribal sovereign immunity, and that the dispositive jurisdictional facts were undisputed. *See E.F.W. v. St Stephen's Mission Indian High Sch.*, 51 F. Supp. 1217, 1221-22 (D. Wyo. 1999). Plaintiffs contend the district court erred in resolving Tribal sovereign immunity as a matter of law because material issues of fact exist upon which they should have been allowed additional discovery. As the district court held and as we discuss in text, the dispositive question in the sovereign immunity inquiry is the legal effect of the

(continued...)

We review de novo a district court's dismissal under Rule 12(b)(1) and its ruling on sovereign immunity. *See Ordinance 59 Ass'n v. United States Dep't of the Interior*, 163 F.3d 1150, 1152 (10th Cir. 1998). "Our independent determination of the issues uses the same standard employed by the district court. Accepting the complaint's allegations as true, we consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief can be granted." *Id.* (citations omitted).

In holding that the Tribal defendants were entitled to sovereign immunity, the district court presumed the following facts as set out in plaintiffs' complaint: the Shoshone and Arapaho Tribes created a tribal agency known as SATSS pursuant to the Intergovernmental Agreement, SATSS is an agency of the Shoshone and Arapaho Tribes, and Mssrs. Kennah and Lone Bear were at all relevant times employees of SATSS. In addition, the court relied on the Intergovernmental Agreement, Title III of the Law and Order Code of the Tribes, and copies of the pleadings from the Tribal court's abuse/neglect proceedings. While plaintiffs dispute the legal effect of these documents, they do not dispute

---

[2](...continued)
Intergovernmental Agreement, the text of which is undisputed. If, as we conclude, the Agreement does not waive the Tribes' sovereign immunity, the fact issues plaintiffs presented to the district court need not be resolved. Moreover, to bolster their argument on appeal, plaintiffs likewise rely on documents the legal effect of which can be determined without additional discovery.

the text of the documents themselves. We agree with the district court that this material presents the relevant undisputed jurisdictional facts, and that sovereign immunity protects the Tribal defendants in this case.[3]

"Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. As an aspect of this sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress." *Fletcher*, 116 F.3d at 1324 (citations and internal quotations omitted). Plaintiffs do not contend that Congress has abrogated the Tribes' immunity in this case, arguing only that the Intergovernmental Agreement and several administrative forms used by SATSS constitute a waiver by the Tribes. We disagree.

"It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (internal quotations omitted). The Agreement contains no language that could even arguably be construed as an unequivocal waiver by the Tribes. To the contrary, the Agreement contains a provision that expressly states the Tribes'

---

[3] Plaintiffs contend on appeal that defendants Kennah and Lone Bear are sued only in their individual capacities. The district court concluded that these defendants were sued in both their official and individual capacities. We need not address this issue, because we are persuaded that suit against them in their official capacities is barred by sovereign immunity, and the claims against them individually are subject to dismissal for failure to adequately allege that they acted under color of state law.

intent to *retain* their sovereign immunity when becoming a party to the Agreement. Section X(D) of the Agreement provides as follows: "Sovereign Immunity. The State of Wyoming, DFS, the Tribes and SATSS do not waive sovereign immunity by entering into this Contract, and specifically retain immunity and all defenses available to them as sovereigns pursuant to Wyo. Stat. Sec. 1-39-104(a) and all other applicable Tribal, Federal or State law." App., vol. I at 156.

Notwithstanding this explicit statement of the Tribes' intent to retain their sovereign immunity, plaintiffs contend that entering the Agreement nonetheless constituted a waiver because in the Agreement the SATSS adopted the administrative rules and regulations of a state agency and agreed to use state forms.[4] The fact that the Tribes agreed to act in accordance with state law to some degree and in essence to adopt state law is simply not an express waiver of their tribal sovereignty with respect to their actions taken under that law.[5] The

_____

[4] Throughout their discussion on appeal, plaintiffs equate the waiver of tribal sovereign immunity with action taken under color of state law. Plaintiffs appear to believe that the same facts are dispositive of both issues. As we discuss in text, however, the inquiries are distinct and rest on different considerations. Accordingly, we address separately whether the facts upon which plaintiffs rely demonstrate either a waiver of sovereign immunity by the Tribes or action under color of state law by tribal officials.

[5] In addition, we point out that the Agreement expressly states it is not to be interpreted as authorizing SATSS, its agents or its employees to act as agents for the state of Wyoming, *see* App., vol. I at 155, and that no child can be removed

(continued...)

-11-

Supreme Court has held: "To say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit . . . . There is a difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa Tribe of Okla. v. Mfg. Techn., Inc.*, 523 U.S. 751, 755 (1998) (citation and quotation omitted).

In sum, nothing in the material before us contains an express waiver of Tribal sovereignty. To the contrary, the only unequivocal statement by the Tribes on the matter is the provision explicitly stating their intent to retain their sovereignty. We thus conclude that the claims against SATSS and against Mssrs. Kennah and Lone Bear in their official capacities are barred.

### III

### Action Under Color of State Law

*A. Tribal defendants*

Plaintiffs asserted claims under 42 U.S.C. § 1983 for compensatory and punitive damages against Mssrs. Kennah and Lone Bear individually, alleging that these defendants violated their rights to liberty and due process. The district

---

[5](...continued)
from her home or maintained in a place other than her home except pursuant to tribal law, *see id.* at 145. These express provisions render specious plaintiffs' argument that by agreeing to use state law to some extent the Tribes became agents of the State and therefore amenable to suit under section 1983.

court dismissed these claims upon concluding that the complaint failed to adequately allege action under color of state law. In reviewing the grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we apply the same standard used by the district court. *See David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1997). We must accept the well-pleaded allegations in the complaint as true, construe them most favorably to the plaintiffs, and determine whether plaintiffs can prove any set of facts establishing that these defendants acted under color of state law. *See id.*

> Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting under color of state law. . . . Therefore, the only proper defendants in a Section 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.

*Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *David*, 101 F.3d at 1353 (internal quotations omitted). "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Jojola*, 55 F.3d at 494.

-13-

As the district court recognized, plaintiffs' complaint contains no factual allegations in support of the bare conclusory assertions of action under color of state law.

> All of plaintiffs' nonconclusory factual allegations regarding these defendants reveal that they are alleged to have acted under authority of Tribal law. There is a complete lack of allegations of involvement of State of Wyoming Agencies or State of Wyoming officials or employees. Plaintiffs allege A.T.B. was identified as a suicide risk and possible victim of abuse or neglect by a counselor at a Bureau of Indian Affairs school at Wind River Reservation. The Complaint alleges that the Bureau of Indian Affairs (BIA) is a federal agency. The Complaint alleges A.T.B. was transported to the hospital by a BIA officer, as the direction of a BIA officer and that the transporting BIA officer was not qualified. The Complaint alleges that the BIA school counselor and principal acted improperly and refused E.F.W. information about her daughter. All of the officials that plaintiff E.F.W. allegedly contacted or who allegedly contacted her regarding her daughter's removal from school and hospitalization and the events relating to the abuse/neglect proceedings are Tribal officials and employees or are federal officials or employees or federal agencies, with two exceptions: One, defendant Cook-Gambler, who is not alleged to be an employee or official of the State of Wyoming or any State agencies. And, two the unnamed non-parties who are alleged to have answered the phone at the Lander Valley hospital.
>    The pleadings of the neglect/abuse proceedings show the proceedings were conducted by SATSS and/or the Tribal Children's Court.

*E.F.W.*, 51 F. Supp. 2d at 1229 (citation and footnote omitted).

We agree with the district court's assessment of the record and its conclusion that plaintiffs failed to adequately allege state action by defendants Kennah and Lone Bear. We decline plaintiffs' request on appeal to place

-14-

significance on bare conclusory allegations of state action when, as here, they are not only unsupported by any factual allegations but are in fact contradicted by the factual allegations plaintiffs do make. *See Southern Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (1998) ("we need not accept Appellant's conclusory allegations as true" in reviewing the grant of a motion under Rule 12(b)(6)).

Plaintiffs also appear to argue on appeal that defendants Kennah and Lone Bear acted under color of state law because the Agreement required SATSS to comply with state rules and regulations promulgated pursuant to state law. Plaintiffs contend that as a result of this provision SATSS, and its employees Mssrs. Kennah and Lone Bear, derived their authority from state law and used state law to seize A.T.B. As we have stated above, the fact that the Tribes agreed to use state law as their own does not establish that the Tribes therefore derived their authority to act from state law. The Tribes merely exercised their sovereignty in deciding what law would govern their actions. Moreover, the Agreement specifically provides that SATSS and its employees are not to be considered agents of the state, and that a child may only be removed from her home or maintained in a place other than her home pursuant to tribal law. Plaintiffs have failed to allege facts demonstrating that the actions of defendants Kennah and Lone Bear were an exercise of power possessed by virtue of the state

and possible only because they were clothed with the authority of state law.  We therefore affirm the dismissal of the claims against these defendants individually.

*B. Defendant Susan Donnell, Ph.D.*

The facts concerning Dr. Donnell's involvement in the circumstances underlying this lawsuit are undisputed.  She was employed as a clinical psychologist with the Indian Health Service, a federal agency, during the relevant time.  She participated in a grief counseling session with students at St. Stephen's School after A.T.B.'s boyfriend, who was a student there, was killed in a hit-and-run accident.  Dr. Donnell discussed with a school counselor her concerns about A.T.B., who had made suicidal gestures before the accident and who appeared depressed after her boyfriend's death.  Ms. Elertson-Johnson told Dr. Donnell that she had advised A.T.B.'s mother, E.F.W., of her concerns, but that E.F.W. refused to allow her daughter to receive treatment.  Dr. Donnell told Ms. Elertson-Johnson that if A.T.B. appeared at imminent risk of harming herself and her mother continued to refuse to allow treatment, Ms. Elertson-Johnson should contact SATSS and report her suspicion of medical neglect.  Dr. Donnell further informed her that A.T.B. would receive the medical care she needed if SATSS were to obtain custody.

After learning that A.T.B. had been taken into protective custody by SATSS and transported to Pine Ridge Hospital, Dr. Donnell contacted the hospital

and referred A.T.B. for admission as a suicide risk so that her treatment costs would be paid by the Indian Health Service. Dr. Donnell attended a staff meeting at the hospital, at which the hospital staff expressed concern over A.T.B.'s condition. Dr. Donnell met with A.T.B. after the meeting and A.T.B. told of physical abuse she had received from her mother and other family members. Dr. Donnell immediately reported this information to defendant Kennah of the SATSS and to the Bureau of Indian Affairs Criminal Investigator's Office. Dr. Donnell subsequently attended court proceedings regarding A.T.B. but did not testify. She had no involvement with A.T.B.'s medical care after those proceedings.

Plaintiffs sought relief against Dr. Donnell under section 1983, claiming that her participation in A.T.B.'s removal from her mother's custody and her placement at Pine Ridge Hospital deprived them of their constitutional rights under color of state law. Dr. Donnell moved for summary judgment, asserting that the undisputed facts reveal she was not a state actor for purposes of section 1983. The district court granted the motion, concluding the undisputed evidence showed "the utter lack of invocation of the authority of the State of Wyoming, whether it be by statute, legal process or court order." App., vol. II at 335. The court held that the fact issues posited by plaintiffs concerning whether Dr. Donnell's conduct was based on a mistaken understanding of the situation or was otherwise improper were irrelevant to her motion for summary judgment because,

even viewing these questions most favorably to plaintiffs, they did not show that Dr. Donnell acted under color of state law. In addition, citing *Pino v. Higgs*, 75 F.3d 1461 (10th Cir. 1996), the court observed that a mental health expert does not act under color of state law by participating in the decision to transport a patient to a hospital for psychiatric evaluation pursuant to state law. The court recognized that a federal official may be liable under section 1983 if she conspires with state officials, but pointed out that the officials with whom Dr. Donnell acted were Tribal employees. The court rejected plaintiffs' argument that the Tribal officials with whom Dr. Donnell interacted were state actors due to the provisions of the Intergovernmental Agreement, reiterating its prior holding that SATSS had not become a state actor by agreeing to adopt state rules, regulations, and forms. Finally, the court held that even if the assumption of custody over A.T.B. by SATSS did not comply with Tribal law, the action was not for that reason converted to one under color of state law.

> The acting under color of state law component of a § 1983 action cannot be created by default because federal or tribal officers or employees may have failed to comply with the federal or Tribal law, Code or Regulations under which they purported to act. Thus, exceeding or improperly complying with federal or Tribal law or regulations does not convert federal or tribal employees into state actors.

App., vol. II at 344.

-18-

On appeal, plaintiffs assert Dr. Donnell acted under color of state law for two reasons: that in authorizing the seizure of A.T.B. Dr. Donnell was performing a traditional governmental function, and that she was acting in concert with Tribal officials who were themselves state actors by virtue of the Intergovernmental Agreement. We have already held above that the Tribal defendants did not become state actors by virtue of the Agreement. We therefore turn to plaintiffs' argument that Dr. Donnell became a state actor because, in participating in A.T.B.'s placement in protective custody, she was performing a function traditionally performed only by the state.

"If the state delegates to a private party a function traditionally exclusively reserved to the State, then the private party is necessarily a state actor. This test is difficult to satisfy. While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1456 (10th Cir. 1995) (citations and internal quotations omitted).

While it is true that states have traditionally removed children from their homes and placed them into protective custody, that action is not one exclusively reserved to the states. "Indian tribes are separate sovereigns with the power to regulate their internal and social relationships," *Fletcher*, 116 F.3d at 1326-27, including the right to regulate domestic matters, *see Santa Clara Pueblo*, 436 U.S.

-19-

at 59 & n.9. Indeed, as discussed above, the Agreement at issue specifically provides that a child of the Wind River Reservation may not be removed from her home or maintained in a place other than her home except pursuant to the provisions of the Tribes' Law and Order Code, *see* App., vol. I at 145, and that SATSS and its agents and employees are not agents of the State. Thus even assuming that Dr. Donnell's conduct can be viewed as removing A.T.B. from her mother's custody,[6] we reject plaintiffs' argument that she was a state actor in so doing because she was performing a function exclusively reserved to the states. Accordingly, summary judgment was properly granted in her favor.

*C. The Remaining Defendants*

The remaining defendants fall into two groups: St. Stephen's School, its counselor Kelly Elertson-Johnson, and its principal R. Kelly Proctor; and Fremont Counseling Services and its employee Lisa Cook-Gambler. Plaintiffs' assertion that all of these defendants were acting under color of state law, however, rests on the contention that they acted in concert with SATSS, which was in turn a state actor by virtue of the provisions of the Intergovernmental Agreement. Having rejected this premise and instead concluding that nothing in the material presented by plaintiffs demonstrates that SATSS was a state actor as a result of the Tribes'

---

[6] We note that in making this argument, plaintiffs focus only on Dr. Donnell's alleged seizure of A.T.B. from her mother's custody.

participation in the Agreement, we affirm the dismissal of these defendants as well.

The judgment of the district court is **AFFIRMED**.