**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN L. BERREY, Chairman;
COLLEEN WILSON AUSTIN;
EDWINA FAYE BUSBY; REBERTA
HALLAM KYSER; FLORENCE
MATHEWS; ARDINA REVARD
MOORE; JEAN ANN LAMBERT;
EDWARD RODGERS, individually
and on behalf of all other members of
the Quapaw Tribe of Oklahoma
similarly situated,

        Plaintiffs,

and

THE QUAPAW TRIBE OF
OKLAHOMA (O-GAH-PAH),

        Plaintiff-Counter-
        Defendant-Appellant,

v.

ASARCO INCORPORATED, Sued as:
Asarco, Inc.; CHILDRESS ROYALTY
COMPANY, sued as: Childress
Royalty Comp., Inc.; DOE RUN
RESOURCES CORPORATION, sued
as: The Doe Run Resources Corp.;

No. 04-5131

EAGLE-PICHER INDUSTRIES, INC.;
NL INDUSTRIES, INC.; UNITED
STATES OF AMERICA; GALE
NORTON, United States Department
of Interior; PUTATIVE CLASS
MEMBERS; BILLYE D. ALBRIGHT;
JAMES E. GILMORE; BEATRICE A.
GRIFFIN; EMMA LOU GRIFFIN;
JULY GRIFFIN PEBEAHSY;
BUDDY L. RICHARDS; FRED L.
RICHARDS; YAUNAK
STEPHENSON; JOHN DOE, sued as:
John & Jane Does 1-300; JANE DOE,
sued as: Jane Does 1-300; CYNTHIA
D. HOLI BLANCHARD; JEB
DEHANAS; PATRICIA ANN
GILLENWATER; LINDA L.
HOLIDAY; SARAH D. JUSTICE;
BETTY LEE McDONALD; MYRON
MOUNTFORD; DONNA RAE
REEVES; JACQUELINE CE
STILLWELL; GEORGE VALLIERE;
JUDY GARNER VANDERFLUTE;
BETTY J. WEITHONER; MARY
LOU WORKS; JOHN DOE, sued as
John and Jane Does 301-600
(Landowners); JANE DOE, sued as
John and Jane Does 301-600
(Landowners),

          Defendants,

and

BLUE TEE CORPORATION, sued as:
Blue Tee Corp.; GOLD FIELDS
MINING CORPORATION, LLC, sued
as: Gold Fields Mining Corp.,

          Defendants-Counter-

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 03-CV-846-H(C)**

Stephen R. Ward (Shelley L. Carter, with him on the briefs), Conner & Winters, LLP, Tulsa Oklahoma, for Plaintiff-Counter-Defendant-Appellant.

Stanley D. Davis, Shook, Hardy & Bacon, LLP, Kansas City, Missouri (Kirk F. Marty, Rebecca J. Schwartz, Barbara M. Smith, Shook, Hardy & Bacon, LLP, Kansas City, Missouri; Robert J. Joyce, Joyce, Paul & McDaniel, P.C., Tulsa, Oklahoma, with him on the brief), for Defendants-Counter-Claimants-Appellees.

Before **HENRY**, **McWILLIAMS** and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

Plaintiff-Appellant Quapaw Tribe brought suit against Defendants-Appellees Blue Tee Corporation and Gold Fields Mining, alleging Defendants and their predecessors in interest caused environmental contamination on Quapaw lands as a result of their mining activities in the 1900s. Defendants asserted counterclaims for contribution and indemnity. The Tribe filed a motion to dismiss Defendants' counterclaims, arguing they were barred by tribal sovereign immunity. The district court denied the motion. It concluded the Tribe had

waived its immunity as to Defendants' counterclaims, which sounded in recoupment, by filing suit. The Tribe appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See Osage Tribal Council v. United States Dep't of Labor*, 187 F.3d 1174, 1179 (10th Cir. 1999). Because a tribe waives its sovereign immunity as to counterclaims sounding in recoupment by filing suit, and Defendants' counterclaims for common law contribution and indemnity are claims in recoupment, we **affirm**.

## II. Background

The issue on appeal is the propriety of an order denying a motion to dismiss Defendants' counterclaims. We thus recite the facts largely as alleged in the counterclaims. The United States allotted to the Quapaw lands located in the far northeastern corner of Oklahoma along Tar Creek. Lead and zinc ores were discovered in the area in the late 1800s and a period of extensive mining began. The Tribe and the United States Department of Interior ("DOI") negotiated mining leases with various companies, including Defendants' predecessors in interest. Many of the mining leases required debris from mining processes, known as chat, to be deposited in piles where it became the property of the landowner. The Tribe profited from the sale of this chat for use as road base, surface material, and railroad ballast in the Tar Creek region and elsewhere. Mining ended in the 1970s, and in 1983, the Tar Creek Superfund Site was placed

on the National Priorities List. Among the environmental hazards alleged to exist at the site are contaminated water runoff from chat piles and former floatation ponds, acid mine drainage, subsidence of the ground, air pollution, erosion, and migration of contaminated water and sediment into downstream rivers and lakes.

The Quapaw Tribe owns in fee approximately eighty acres of the Tar Creek Superfund Site and has an undivided fifty-one percent interest in an additional forty acres. To initiate a cleanup of the site, the Tribe and several individual Tribe members brought suit against former mine owners and operators and their successors in interest.[1] The Tribe asserted claims of public and private nuisance, trespass, unjust enrichment, strict liability, and deceit by false representations, nondisclosure, and/or concealment. Subsequently, the Tribe amended its complaint to add claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6924, 6972, and for administrative action in violation of law.

Defendants filed counterclaims for common law contribution and indemnity, and contribution under CERCLA. The Tribe filed a motion to dismiss

---

[1]The Tribe brought suit as *parens patriae* under the common law public trust doctrine. The individual Tribe members sued as representatives of a class of "former and current owners, and possessors of real property located within the Quapaw Reservation."

Defendants' counterclaims, arguing they were barred by tribal sovereign immunity. The district court denied the motion and a subsequent motion to reconsider, concluding the Tribe waived its sovereign immunity as to claims in recoupment by suing Defendants. Moreover, the district court determined Defendants' counterclaims are claims in recoupment under the test established in *FDIC v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994).

## III. Discussion

### A. Jurisdiction

As an initial matter, Defendants argue the Tribe's appeal is jurisdictionally barred for failure to file a timely notice of appeal. The Federal Rules of Appellate Procedure require a notice of appeal to be filed "within 30 days after the judgment or order appealed from is entered," except when the United States is a party. Fed. R. App. P. 4(a)(1). The district court denied the Tribe's motion to dismiss on May 18, 2004. The Tribe's motion to reconsider was denied on June 21, 2004. The Tribe filed an untimely notice of appeal on August 27, 2004. Prior to this filing, however, the Tribe filed a motion to certify the district court's order denying dismissal.[2] The motion to certify was filed on July 21, 2004, the thirtieth

---

[2]The Tribe claims it sought to certify the district court's order because it was not clear at the time whether denials of tribal sovereign immunity were immediately appealable. Five years earlier, however, this court held the denial of tribal immunity is immediately appealable under the collateral order doctrine. *Osage Tribal Council v. United States Dep't of Labor*, 187 F.3d 1174, 1179 (10th

day after the district court entered its order denying reconsideration.[3]  A footnote

in the motion stated

> [s]hould this Court determine that the Tribe's appeal is by right
> under the Collateral Order doctrine, the Tribe requests that the Court
> and the parties treat this motion as a notice of appeal, and advise the
> Tribe and Defendants of their obligation to proceed before the
> Circuit Court, tolling all filing requirements until such order is made.
> This motion is filed within the thirty day period for taking appeal,
> and therefore notice of appeal is timely if the Court determines that
> the Collateral Order doctrine applies.

ROA, Vol. II at 619.  The Tribe argues its motion to certify is the functional

equivalent of a notice of appeal.

"An appeal must not be dismissed for informality of form or title of the

notice of appeal."  Fed. R. App. P. 3(c)(4).  A filing that is "technically at

variance with the letter of [Rule 3]" satisfies the rule if it is the "functional

equivalent of what the rule requires."  *Smith v. Barry*, 502 U.S. 244, 248 (1992)

---

Cir. 1999).

[3]The time period to file a notice of appeal began after the district court's
denial of the motion for reconsideration, not its denial of the motion to dismiss.
When a party timely files a motion to alter or amend a judgment under Rule 59(e)
of the Federal Rules of Civil Procedure, the time to file an appeal runs from the
entry of the order disposing of the Rule 59 motion.  Fed. R. App. P.
4(a)(4)(A)(iv).  The Tribe's motion for reconsideration was a Rule 59(e) motion
because it was filed within ten days of the district court's judgment on the Tribe's
motion to dismiss.  *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (a
motion for reconsideration filed within ten days of a district court's entry of
judgment is treated as a Rule 59(e) motion to alter or amend the judgment).  Thus,
the time period for the Tribe's appeal did not begin to run until the district court
entered its order denying reconsideration.

(quotation omitted). A document is the functional equivalent of a notice of appeal if it contains the three elements of notice required by Rule 3(c). *See United States v. Smith*, 182 F.3d 733, 735 (10th Cir. 1999). Rule 3(c) requires that a notice of appeal specify (1) the party taking the appeal, (2) the order being appealed, and (3) the name of the court to which the appeal is taken. Fed. R. App. P. 3(c)(1). The purpose of Rule 3(c)'s requirements is to provide all parties and the court with sufficient notice of a litigant's intent to seek appellate review. *Barry*, 502 U.S. at 248.

The Tribe's motion to certify met all the requirements of Rule 3(c) and put Defendants and the district court on notice of its intent to appeal. The Tribe's motion stated the Tribe was seeking certification to the Tenth Circuit Court of Appeals to appeal the district court's order denying dismissal based on tribal sovereign immunity. The motion also provided that if certification was unnecessary because of the collateral order doctrine, the motion to certify was to be treated as a notice of appeal. Because the Tribe's motion to certify is the functional equivalent of a notice of appeal and was timely pursuant to Fed. R. App. P. 4(a)(1), we have jurisdiction to consider the merits of the Tribe's appeal.[4]

---

[4]For purposes of deciding the jurisdictional issue in this case, we have assumed Rule 58 of the Federal Rules of Civil Procedure does not apply to orders, like the order denying tribal sovereign immunity at issue here, that are immediately appealable under the collateral order doctrine. Rule 58(a)(1) of the

(continued...)

## B.  Tribal Sovereign Immunity

The Tribe argues Defendants' counterclaims are barred by tribal sovereign immunity.  Specifically, the Tribe contends the doctrine of equitable recoupment does not permit claims against a tribe, like the Quapaw Tribe, that has not waived its immunity from suit by legislative enactment.  Questions of tribal sovereign

---

[4](...continued)
Federal Rules of Civil Procedure requires a judgment to be set forth on a separate document, except in limited circumstances not applicable here.  When a separate document is required under Rule 58, the time period for filing a notice of appeal begins when the judgment is set forth on a separate document or, if the district court fails to issue a separate document, 150 days after the entry of the order in the civil docket.  Fed. R. Civ. P. 58(b)(2).  The district court did not issue a separate judgment in this case, and the court's order denying dismissal does not satisfy the requirements of Rule 58.  *See Clough v. Rush*, 959 F.2d 182, 185 (10th Cir. 1992) (concluding fifteen-page order containing detailed legal analysis did not satisfy separate document requirement).  The Advisory Committee Notes to the Federal Rules of Civil Procedure, however, suggest that the separate document requirement does not apply to orders appealable under the collateral order doctrine.  The Committee Notes state "[i]n theory, . . . the separate document requirement continues to apply to an interlocutory order that is appealable as a final decision under collateral-order doctrine."  Fed. R. Civ. P. 58 advisory committee's note (2002 Amendments).  The Committee Notes continue, however, by observing that "[a]ppeal time should start to run when the collateral order is entered without regard to creation of a separate document and without awaiting expiration of the 150 days provided by Rule 58(b)(2)."  *Id*.  Thus, we have analyzed the jurisdictional issue in this case on the assumption that the district court entered an order or judgment for purposes of Rule 4(a) when it issued its order denying dismissal.  The time period to file a notice of appeal then began to run upon issuance of the order denying the Rule 59 motion to reconsider.  Fed. R. App. P. 4(a)(4)(A)(iv).  Were we to apply Rule 58, however, the outcome would be the same and this court would have appellate jurisdiction.

immunity are reviewed *de novo*. *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1303 (10th Cir. 2001).

It is well established that Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). This immunity includes exemption from suit without congressional authorization or waiver by the tribe. *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir. 1982). Generally, tribal sovereign immunity is deemed to be coextensive with the immunity of the United States. *Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 319–20 (10th Cir. 1982).

The Supreme Court has recognized that when the United States brings suit, it impliedly waives its immunity as to all claims asserted by the defendant in recoupment. *Bull v. United States*, 295 U.S. 247, 260–63 (1935). Claims in recoupment arise out of the same transaction or occurrence, seek the same kind of relief as the plaintiff, and do not seek an amount in excess of that sought by the plaintiff. *Hulsey*, 22 F.3d at 1487. The waiver of sovereign immunity is predicated on the rationale that "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the [sovereign's] action is grounded." *Bull*, 295 U.S. at 262. In *Jicarilla*, we extended application of the recoupment doctrine to Indian tribes; thus, when a tribe files suit it waives its

immunity as to counterclaims of the defendant that sound in recoupment. 687 F.2d at 1344; *see also Rosebud Sioux Tribe v. Val-U Const. Co.*, 50 F.3d 560, 562 (8th Cir. 1995).

The Tribe urges us to reconsider our precedent applying the doctrine of recoupment as a waiver of tribal sovereign immunity in light of *United States v. Dalm*, 494 U.S. 596 (1990). The Tribe argues the Supreme Court severely limited the applicability of the recoupment doctrine in *Dalm* by holding the doctrine cannot be used to permit a claim against the United States that is otherwise barred by the statute of limitations. *Id*. at 608. *Dalm*, however, is contextually inapplicable. In *Dalm*, the plaintiff filed a claim against the United States for a tax refund, and the district court concluded it lacked jurisdiction because the claim was outside the applicable statute of limitations. *Id*. at 608–09 (noting "the United States . . . is immune from suit, save as it consents to be sued . . . and the terms of its consent . . . define [the] court's jurisdiction to entertain the suit") (quotations omitted). The plaintiff argued her claim was timely under the doctrine of equitable recoupment. *Id*. at 600. The Court rejected the plaintiff's argument, distinguishing her case from *Bull*, where the Court held a claim for recoupment could be asserted notwithstanding the statute of limitations. *Id*. at 604–08. The Court noted that the recoupment claim in *Bull* was asserted by a defendant as a defense to an income tax deficiency claim by the government; the

Court had jurisdiction because the government's original claim was properly within the jurisdiction of the Court. *Id*. at 606. The plaintiff in *Dalm*, on the other hand, initiated the suit against the government, and because of the statute of limitations, there was no jurisdiction over the plaintiff's claim. *Id*. at 609–10. Thus, the plaintiff's claim was barred even though she characterized it as a claim in recoupment. Unlike the plaintiff in *Dalm*, Defendants here assert recoupment claims in response to the Tribe's original suit. Thus, *Dalm* is in apposite, and *Bull* and *Jicarilla* control.[5]

The Tribe also misunderstands the scope of the waiver of immunity under the doctrine of recoupment. The Tribe contends the United States only waives immunity when claims asserted in recoupment are of the same kind as claims for

---

[5]The Supreme Court's decision in *Oklahoma Tax Commission v. Potawatomi Indian Tribe* also does not affect the applicability of the recoupment doctrine to Indian tribes. 498 U.S. 505 (1991). In *Potawatomi*, the Tribe sought to enjoin the state of Oklahoma from assessing taxes on cigarette sales within its reservation. *Id*. at 507. Oklahoma counterclaimed, seeking, *inter alia*, money damages for past unpaid taxes. *Id*. The Court held Oklahoma's counterclaims were barred by tribal sovereign immunity. *Id*. at 509–10. Oklahoma's counterclaims, however, did not sound in recoupment because they sought money damages while the Tribe sought only an injunction. Thus, the Court concluded, "the Tribe did not waive its sovereign immunity merely by filing an action for injunctive relief." *Id*. at 510. Because Oklahoma's counterclaims were not recoupment claims, *Potawatomi* says nothing about the applicability of the recoupment doctrine as a waiver of tribal sovereign immunity when the defendant's counterclaims do sound in recoupment.

-12-

which Congress has previously abrogated sovereign immunity.[6]  Thus, the Tribe argues, tribal sovereign immunity should only be waived for claims in recoupment that are of the same kind as claims for which the Tribe has legislatively waived immunity or Congress has abrogated tribal immunity.  Waiver under the doctrine of recoupment, however, does not require prior waiver by the sovereign or an independent congressional abrogation of immunity.  If the defendant's counterclaims are already permitted under an independent congressional abrogation of immunity, there would be no need for implied waiver under the recoupment doctrine.  Therefore, in *Jacarilla*, we stated,

> when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence *which is the subject matter of the government's suit*, and to the extent of defeating the government's

_____

[6]In support of this argument, the Tribe cites to our decision in *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481 (10th Cir. 1984).  This case, however, does not support the proposition that the United States only waives immunity as to claims in recoupment that are of the same kind as claims for which Congress has previously abrogated immunity.  In *Boned Beef*, the United States initiated a seizure action and the defendant counterclaimed for money damages. *Id*. at 1490.  The counterclaims did not sound in recoupment because they did not seek the same type of relief as the government's original action.  *Id*.  Therefore, we concluded the defendant's counterclaims were not permitted under the recoupment doctrine.  *Id*.  We went on to determine whether Congress had abrogated sovereign immunity for the type of claims asserted by the defendant as an independent ground for permitting defendant's counterclaims.  Our determination of whether an independent congressional abrogation of immunity existed was only necessary because we had already determined the defendant's counterclaims could not otherwise be asserted under the recoupment doctrine.  *Id*. at 1490–91.

claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims.

687 F.2d at 1344 (quotation omitted and emphasis added). The scope of the waiver under the doctrine of recoupment, thus, is limited only by the requirements for a recoupment claim, i.e. that the claim arise from the same transaction as the plaintiff's claim, seek the same relief as the plaintiff's claim, and seek an amount not in excess of the plaintiff's claim. Therefore, the district court did not err in concluding the Tribe waived its immunity as to any of Defendants' counterclaims sounding in recoupment.

## C. Defendants' Counterclaims for Contribution and Indemnity

As an alternative ground for dismissal, the Tribe argues Defendants' counterclaims for common law contribution and indemnity do not sound in recoupment. To constitute a claim in recoupment, a defendant's claim must (1) arise from the same transaction or occurrence as the plaintiff's suit; (2) seek relief of the same kind or nature as the plaintiff's suit; and (3) seek an amount not in excess of the plaintiff's claim. *Hulsey*, 22 F.3d at 1487.

Defendants' counterclaims allege that, under the mining leases, Defendants were required to leave any debris from mining processes, including chat, on the land mined, where it became the property of the landowner. Because of the lease

terms, Defendants assert, the Tribe owned and controlled chat deposited on Tribal land and sold or distributed it in the Tar Creek region for use as road base, surface material, and railroad ballast. Thus, Defendants claim the Tribe contributed to any contamination caused by chat. Additionally, Defendants allege, to the extent the Tribe was a lessor under the mining leases, it was responsible for the terms of those leases, including, *inter alia*, provisions for the disposition of chat. Because the Tribe dictated Defendants' actions through lease terms, Defendants assert the Tribe must indemnify Defendants if they are held liable for contamination caused by disposing of chat in accordance with lease terms.[7]

Defendants' counterclaims satisfy the first prong of *Hulsey*'s test for claims in recoupment because they arise from the same transaction or occurrence as the Tribe's claims. Counterclaims arise from the same transaction or occurrence if they are compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure. *See Hulsey*, 22 F.3d at 1487.

---

[7]The Tribe contends it did not own any land on which Defendants' mining operations took place or enter into any mining leases with Defendants. This factual dispute, however, is not relevant to our determination of whether Defendants' counterclaims sound in recoupment. Defendants have alleged the Tribe owned land at the Tar Creek Site, entered into mining leases, and sold and distributed chat for use in the Tar Creek region. These allegations are sufficient to survive a motion to dismiss.

A counterclaim is compulsory if: (1) the issues of fact and law raised by the principal claim and the counterclaim are largely the same; (2) *res judicata* [i.e., claim preclusion] would bar a subsequent suit on defendant's claim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and, (4) there is a logical relationship between the claim and counterclaim.

*Id*.

Defendants' counterclaims are compulsory under Rule 13(a). First, the issues of fact and law raised by the Tribe's claims and Defendants' counterclaims are largely the same. The common factual issues include the terms of the mining leases, whether the terms were dictated by DOI or the Tribe, the identity of parties to the leases, ownership and control of mining debris, and the cause of the contamination. The legal issues raised by both claims include the rights and responsibilities of various parties under the mining leases and the identification of parties legally responsible for the contamination of the Tar Creek site. Second, claim preclusion would bar a subsequent suit by Defendants against the Tribe alleging claims similar to those asserted as counterclaims here.[8] Third, the same evidence will be used to support or refute the Tribe's claims and Defendants' counterclaims. Both the Tribe and Defendants will rely on the terms of the

_____

[8] Under Tenth Circuit law, claim preclusion prevents a party from raising a legal claim in a second lawsuit if: (1) both suits involve the same parties or their privies, (2) the causes of action in both suits arise from the same transaction, and (3) the first suit resulted in a final judgment on the merits. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

mining leases, evidence of DOI's or the Tribe's influence in dictating those terms, and evidence regarding contamination caused by chat. Finally, there is a logical relationship between the Tribe's claims and Defendants' counterclaims. The Tribe is attempting to hold Defendants liable for contamination in the Tar Creek area as a result of Defendants' and their predecessors' mining activities. Defendants argue they are not responsible for contamination caused by chat because mining leases dictated how Defendants were to dispose of the chat, and some chat was owned and controlled by the Tribe. Thus, the claims of both parties are logically related. Because Defendants' counterclaims are compulsory, they satisfy the first prong of *Hulsey*.[9]

Defendants' counterclaims also seek the same kind of relief as the Tribe's claims. We have interpreted the second requirement of *Hulsey* "to mean that if the plaintiff is seeking monetary relief, the defendant's counterclaims must also

---

[9]The Tribe cites *Berger v. City of North Miami* in support of its position that claims regarding contamination of tribal lands differ factually and legally from counterclaims concerning mining leases. 820 F. Supp. 989 (E.D. Va. 1993). The facts of *Berger*, however, are distinguishable from the present case. In *Berger*, the defendant's counterclaims based on a lease agreement were wholly unrelated to contamination of the Superfund site. *Id*. at 990–91. The district court noted in *Berger* that to be from the same transaction or occurrence as a CERCLA claim, defendant's counterclaims would have to involve factual inquiries into the identity of parties responsible for generation and placement of hazardous substances on the property and the extent to which various parties controlled the operation of a landfill on the property. *Id*. at 993–94. In the present case, Defendants' counterclaims relate directly to these issues.

seek monetary relief." *Id*. There is no requirement that the defendant also seek injunctive relief merely because the plaintiff is seeking an injunction. In the present case, the Tribe seeks remediation, an injunction, and monetary damages. Because Defendants also seek monetary damages, their counterclaims satisfy the second requirement for a claim in recoupment.

Finally, Defendants' counterclaims satisfy the third prong of *Hulsey* because they do not seek an amount in excess of that sought by the Tribe. Claims for contribution and indemnity, by their very nature, are limited to the amount of any judgment in favor of the injured party. Because Defendants' counterclaims arise from the same transaction or occurrence as the Tribe's claims and seek relief of the same kind or nature, but not in excess of the amount sought by the Tribe, they are claims in recoupment.

**D. Defendants' Counterclaims under CERCLA**

The Tribe also argues Defendants' counterclaims for contribution under CERCLA should be dismissed.[10] CERCLA permits a party to seek contribution from any other "person" who is liable or potentially liable as an owner or operator

---

[10]The Tribe first asserted claims under CERCLA in its first amended complaint. As a result, Defendants did not file an answer asserting counterclaims under CERCLA until after the district court had been fully briefed on both the Tribe's motion to dismiss and motion to reconsider. Thus, the statutory issue of whether counterclaims for contribution against an Indian tribe are permitted under CERCLA has not yet been presented to the district court.

of a facility from which hazardous substances have been released. 42 U.S.C. § 9613(f)(1). The Tribe contends Defendants' counterclaims are not permitted under this provision of CERCLA because the definition of "person" in the statute does not include Indian tribes. *Id*. § 9601(21). Because we lack jurisdiction over this issue, we do not address the Tribe's argument.

Under 28 U.S.C. § 1291, this court only has appellate jurisdiction over "final decisions" of district courts. Although the district court has not issued a final decision in this case, under the collateral order doctrine, some district court orders are considered "final" even though they are entered before a case has been fully resolved. *E.g.*, *Osage Tribal Council*, 187 F.3d at 1179 (concluding a denial of tribal sovereign immunity is an immediately appealable collateral order). The collateral order doctrine does not apply to the Tribe's assertion that CERCLA does not permit counterclaims against an Indian tribe, however, because the Tribe's argument is based on statutory interpretation, not tribal sovereign immunity. Thus, this issue is not immediately appealable.

Nevertheless, this court has discretion to exercise pendent appellate jurisdiction over nonappealable issues once we have asserted jurisdiction over other appealable issues in the same case. *Garrett v. Stratman*, 254 F.3d 946, 953 n.9 (10th Cir. 2001). The exercise of pendent jurisdiction, however, "is generally disfavored." *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995). It

is appropriate to exercise pendent appellate jurisdiction only where resolution of the appealable issue necessarily resolves the nonappealable issue, or where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one. *Id*. at 930. Here, our determination that tribal sovereign immunity does not bar Defendants' counterclaims for contribution and indemnity does not resolve the issue of whether Defendants' counterclaims under CERCLA are statutorily barred. Nor is it necessary for us to reach the Tribe's CERCLA argument to assess the appropriateness of the district court's order denying dismissal of Defendants' contribution and indemnity counterclaims. Therefore, we decline to assert pendent appellate jurisdiction over the Tribe's contention that Defendants' CERCLA counterclaims are not authorized by the statute.[11]

## IV. Conclusion

For the foregoing reasons, this court **AFFIRMS** the district court's order denying the Tribe's motion to dismiss.

---

[11]The Tribe also asserts Defendants' counterclaim against the Tribe as joint tortfeasor for common law contribution is not valid under Oklahoma law because Oklahoma does not recognize such a claim. Because this issue also does not involve tribal sovereign immunity, we do not have jurisdiction to address it on interlocutory appeal.